**Michael JAMES, Appellant,**

v.

**Gregory LUSBY et al.**

**No. 73-1324.**

United States Court of Appeals, District of Columbia Circuit.

April 24, 1974.

Rehearing Denied Aug. 19, 1974.

John Vanderstar, Ralph J. Temple, and David Weissbrodt, Washington, D. C., were on the brief for appellant.

C. Francis Murphy, Corp. Counsel, Richard W. Barton and Leo N. Gorman, Asst. Corp. Counsel, Washington, D. C., were on the brief for appellees District of Columbia, Wilson and Humphrey.

Before BAZELON, Chief Judge, WRIGHT, Circuit Judge, and WYZAN-SKI,* United States Senior District Judge for the District of Massachusetts.

PER CURIAM:

This is an appeal from an order of the District Court of January 11, 1973, which certified the case before us to the Superior Court of the District of Columbia. Appellant urges us to reverse that order and find jurisdiction in the District Court. We decline, and hereby affirm the order of January 11, 1973.

I.

This case arose out of events which occurred on December 21, 1971. Appellant, at that time a college student in Michigan visiting his mother for the holidays, and a friend were window shopping hear the intersection of 13th and F Streets, N.W. While they were crossing that intersection under the direction of a traffic patrolman, a policeman on a scooter drove close to them and shouted for them to get out of the

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

way. It is undisputed that appellant responded to the warning with an obscenity. The policeman, appellee Lusby, parked his scooter and proceeded to question appellant and his companion who were standing on the sidewalk. After a short interrogation, during which appellant cursed several times, Officer Lusby arrested him for disorderly conduct,[1] handcuffed him, and went to telephone for a patrol car.

The appellant was transferred by patrol car to the Fifth Precinct police station. Appellant's mother, who had been informed of her son's whereabouts by his companion, arrived shortly and posted a $10.00 collateral bond to obtain his release. Appellant returned to college in Michigan before the date set for his court appearance, thereby forfeiting his collateral and incurring a criminal record for "disorderly conduct."

On May 12, 1972, appellant filed this action, seeking compensatory and punitive damages of $25,000 each for false arrest and imprisonment, assault and battery, and deprivation of civil rights. The complaint alleged that the action arose under the Constitution and Laws of the United States, specifically, the Civil Rights Act of 1871.[2] Jurisdiction in the District Court was asserted under both 28 U.S.C. §§ 1331,[3] because it was alleged that the amount in controversy exceeded $10,000, and 1343(3) and (4)[4] (1970).

1. Appellant was arrested under 22 D.C.Code § 1107, which provides:

It shall not be lawful for any person or persons within the District of Columbia to congregate and assemble in any street, avenue, alley, road, or highway, or in or around any public building or inclosure, or any park or reservation, or at the entrance of any private building or inclosure, and engage in loud and boisterous talking or other disorderly conduct, or to insult or make rude or obscene gestures or comments or observations on persons passing by, or in their hearing, or to crowd, obstruct, or incommode, the free use of any such street, avenue, alley, road, highway, or any of the foot pavements thereof, or the free entrance into any public or private building or inclosure; it shall not be lawful for any person or persons to curse, swear, or make use of any profane language or indecent or obscene words, or engage in any disorderly conduct in any street, avenue, alley, road, highway, public park or inclosure, public building, church, or assembly room, or in any other public place, or any place wherefrom the same may be heard in any street, avenue, alley, road, highway, public park or inclosure, or other building, or in any premises other than those where the offense was committed, under a penalty of not more than $250 or imprisonment for not more than ninety days, or both for each and every such offense. (July 29, 1892, 27 Stat. 323, ch. 320, § 6; July 8, 1898, 30 Stat. 723, ch. 638; June 29, 1953, 67 Stat. 97, ch. 159, § 210.)

2. 42 U.S.C. § 1983, which provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other persons within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

3. (a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States.

(b) Except when express provision therefor is otherwise made in a statute of the United States, where the plaintiff is finally adjudged to be entitled to recover less than the sum or value of $10,000, computed without regard to any setoff or counterclaim to which the defendant may be adjudged to be entitled and exclusive of interests and costs, the district court may deny costs to the plaintiff and, in addition, may impose costs on the plaintiff.

4. (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

Appellee filed an answer on June 29, 1973, denying both the allegation of the amount in controversy and all factual allegations supporting the claimed violations of civil rights. Depositions by both parties were ordered and taken. An amended complaint was filed on December 21, adding diversity of citizenship as a basis for jurisdiction in the District Court [5] and naming as additional defendants the appellee's supervisors and the District of Columbia on the grounds that their negligence in training, instructing and supervising Officer Lusby was a proximate cause of the injuries sustained by appellant. On January 11, 1973, the District Court certified the case to the Superior Court, *sua sponte,* "upon consideration of the record in this case." Appellant's motion for reconsideration was denied.

## II.

Appellant's first argument is that the District Court failed to afford him an opportunity to demonstrate that the amount in controversy satisfies the jurisdictional requirement.[6] The District Court did not hold a hearing before ordering the certification, nor does appellant request a full evidentiary hearing at this time. He does argue that more of an opportunity must be afforded plaintiffs than was given in this case to justify their claim of jurisdiction.

Appellant refers to a provision of local law, 11 D.C.Code § 922(b)[7] as a Congressional mandate that certification be permitted only "at or after a pretrial hearing." The relevant statutory language is reproduced in the margin. Although the phrase "at or subsequent to

5. Appellant claimed he was a resident of Michigan, and therefore was entitled to claim diversity jurisdiction under 28 U.S.C. § 1332 (1970), which provides:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—

(1) citizens of different States;

(2) citizens of a State, and foreign states or citizens or subjects thereof; and

(3) citizens of different States and in which foreign states or citizens or subjects thereof are additional parties.

(b) Except when express provision therefor is otherwise made in a statute of the United States, where the plaintiff who files the case originally in the Federal courts is finally adjudged to be entitled to recover less than the sum or value of $10,000, computed without regard to any setoff or counterclaim to which the defendant may be adjudged to be entitled, and exclusive of interest and costs, the district court may deny costs to the plaintiff and, in addition, may impose costs on the plaintiff.

(c) For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business: *Provided further,* That in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business.

(d) The word "States", as used in this section, includes the Territories, the District of Columbia, and the Commonwealth of Puerto Rico, June 25, 1948, c. 646, 62 Stat. 930; July 26, 1956, c. 740, 70 Stat. 658; July 25, 1958, Pub.L. 85–554, § 2, 72 Stat. 415; Aug. 14, 1964, Pub.L. 88–439, § 1, 78 Stat. 445.

6. District of Columbia v. Carter, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613, which was decided on January 10, 1973, held that the District of Columbia is not a "State or Territory" within the meaning of 42 U.S.C. § 1983, and that part of appellant's claim of jurisdiction under § 1343(3) and (4) was therefore disallowed.

7. (b) In a civil action begun in the United States District Court for the District of Columbia during the thirty-month period beginning on the effective date of the District of Columbia Court Reorganization Act of 1970, the court may certify the action to the Superior Court if it appears to the satisfaction of the United States District Court at or subsequent to any pretrial hearing, but before the trial thereof, that—

(1) the action will not justify a judgment in excess of $50,000; and

(2) the action does not otherwise invoke the jurisdiction of the court.

a pretrial hearing" appears in predecessor statutes to those in question here,[8] there has been no definitive judicial interpretation of that phrase in this Circuit requiring a hearing before certification. It is well-established law in this jurisdiction that exercise of the general authority to certify cases to courts of local jurisdiction rests in the sound discretion of the District Court. Gray v. Evening Star Newspaper Co., 107 U.S. App.D.C. 292, 277 F.2d 91 (1960). The standard of review, therefore, is whether the trial court abused that discretion. Block v. District of Columbia, 160 U.S. App.D.C. 380, 492 F.2d 646 (1974).

■■ The issue before the District Court was whether or not the record before it showed that the amount in controversy exceeded $10,000. The determination of this issue is preliminary to the assumption of jurisdiction in the case; it is the affirmative duty of the trial court to inquire into this issue, whether or not it is raised by the parties. McNutt v. General Motors, 298 U.S. 178, 186–187, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). The standard to be applied by the trial court in certifying a case is similar to that in dismissal, and was clearly stated in St. Paul Indemnity Co. v. Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 854 (1938):

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. But if, from the face of the pleadings, it is

apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed.

303 U.S. 288–289.

We must, therefore, look to the record in the case to determine whether it supports the conclusion reached by the District Court. Appellant contends that even without a hearing, the record demonstrates the jurisdictional requirements. The factual allegations supporting appellant's claim appear in both his pleadings and in the depositions of appellant, appellee, and Sergeant Gilbert Martin, the appellee's direct superior in the police force. Unlike the cases cited principally by appellant, the District Court was in possession of a record fuller than mere pleadings. In Opelika Nursing Home v. Richardson, 448 F.2d 658, 664 (5th Cir. 1971), the trial court had based its determination solely on the basis of pleadings. In KVOS v. Associated Press, 299 U.S. 269, 57 S.Ct. 197, 200, 81 L.Ed. 183 (1936), the party pleading jurisdictional amount had not pleaded facts tending to support the amount claimed as damages, but merely made the general allegation of jurisdictional amount. The Supreme Court stated:

> Such a formal allegation is sufficient, unless the bill contains others which qualify or detract from it in such measure that when all are considered together it cannot fairly be said that jurisdiction appears on the face of the complaint, in which case the suit should be dismissed by the court *sua sponte* or upon the defendant's motion. In this case the formal allegation is not reenforced or strengthened by other portions of the complaint; neither is it neutralized or

---

8. *See, e. g.,* 11 D.C.Code § 962 (1969) discussed in Hughes v. Pennsylvania Railroad Co., 133 U.S.App.D.C. 174, 409 F.2d 460 (1969).

weakened by qualifying or detracting allegations. In effect it stands alone. Therefore the court would not have been bound to dismiss upon a motion based solely on alleged insufficient pleading of the amount in controversy; though it might, of its own motion, have entered upon an inquiry to ascertain whether the cause was one over which it had jurisdiction. But where the allegations as to the amount in controversy are challenged by the defendant in an appropriate manner the plaintiff must support them by competent proof.

299 U.S. 277–278. In the case before us, the District Court had before it both pleadings and three depositions from which to draw information.

■ Appellant argues that the District Court could not have found "to a legal certainty" that the amount in controversy did not exceed $10,000. Appellant had claimed both compensatory and punitive damages, which are both to be considered in determining the amount in controversy for jurisdictional purposes. Bell v. Preferred Life Assurance Co., 320 U.S. 238, 240, 64 S.Ct. 5, 88 L.Ed. 15 (1943). He also claims that the national trend towards increasing awards in cases alleging false imprisonment and police misconduct should guide the court in its decision. Several cases are cited in appellant's brief where large awards were made for fairly short detentions. See, e. g., Reicheneder v. Skaggs Drug Center, 421 F.2d 307 (5th Cir. 1970); Clark v. Kroger, 382 F.2d 562 (7th Cir. 1967). We are also urged to consider figures obtained from a national survey of awards in cases involving police officers who denied a citizen his civil rights.[9]

■ While appellant's arguments are well-fashioned, they cannot overcome the record. The determination of the amount in controversy is closely tied to the facts in each case. The facts in this case disclose the uncontested shouting of an obscenity by appellant at a downtown intersection, and his continued use of expletives to the policeman when several people had gathered on the sidewalk to watch the interrogation. Such conduct would not support the award of punitive damages against an arresting officer in this Circuit,[10] absent clear evidence of abusive conduct by the arresting officer.

The record also reveals that the appellant failed to mitigate the impact of the alleged wrongful acts and conviction by failing to appear to contest the charge of disorderly conduct and by failing to seek equitable relief in the Superior Court upon a showing of lack of culpability. Spock v. District of Columbia, 283 A.2d 14 (D.C.App.1971).

On the issue of personal injury, although appellant claims that the handcuffs put on him at the time of his arrest were so tight that they raised welts on his wrist (Deposition of Michael James at 28–30), he did not seek medical attention for the injury. Although he claims his injuries included "mental anguish and humiliation," appellant responded "No" to the question "Were you distressed [by the incident]?" (Deposition of Michael James at 45). The only source of his sense of humiliation in the record is his belief that in the course of the interrogation on the sidewalk and later at the police station, the appellee's repeated questioning concerning appellant's college was "unnecessary, because he had been asking me the same questions over and over . . . ." (Deposition of Michael James at 47). This evident lack of distress contrasts sharply with the facts in cases in which high awards for false imprisonment were obtained, where severe mental anguish was an important part of the plaintiff's case.[11]

9. Jury Verdict Research, Inc., 2A Personal Injury Valuation Handbook, Report No. 125 (1970).

10. Von Sleichter v. United States, 153 U.S. App.D.C. 169, 472 F.2d 1244, 1247 (1972).

11. For example, in both Reicheneder v. Skaggs Drug Center, 421 F.2d 307 (5th Cir. 1970) and Clark v. Kroger, 382 F.2d 562 (7th Cir. 1967), the claim for false imprisonment was joined with a claim for slander.

Appellant's reliance upon our decision in Hartigh v. Latin, 158 U.S.App.D.C. 289, 485 F.2d 1068 (1973), is misplaced. In the two cases decided by our opinion, orders of certification to the Superior Court were reversed for error in the interpretation of the Supreme Court decision in District of Columbia v. Carter, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973). In neither case had the defendants disputed the plaintiffs' allegation that the amount in controversy exceeded $10,000. Moreover, in both cases there were allegations of severe physical injuries and assaults committed by police during incarceration, and in both cases medical assistance was sought and shown on the record.

Appellant also proposes that the District Court erred in certifying the case so promptly after District of Columbia v. Carter, *supra*, that appellant was deprived of the opportunity to assert jurisdiction under a separate statute, 42 U. S.C. § 1981 (1970),[12] which provides for jurisdiction under 28 U.S.C. § 1343(1) (1970) without a minimum jurisdictional amount. Appellant argues that he would have reformulated his complaint in the face of the *Carter* decision. He admits, however, that many of the facts supporting a reformulation into a § 1981 action, a private suit for racial discrimination, are not in the record presently. Nowhere in the present pleadings is there an allegation of racial discrimination. Nor do we find any precedent in law or basis in policy for requiring a trial court to consider whether some set of additional facts might be pleaded which would preserve federal jurisdiction before that court certifies a case to a local court. Appellant had already amended his complaint once, and deposi-

tions had already been taken by both parties. Surely, if facts amounting to racial discrimination were in existence, the appellant had had opportunities over the seven months of litigation to bring them before the court.

We find no abuse of discretion in the District Court Order of certification on the record before us. Accordingly, we affirm that order.

So ordered.

In the latter case, there was testimony that after detention in a back room of a grocery store for some twenty minutes for questioning, the plaintiff was "hysterical and in tears." In both cases, moreover, there seems to have been no probable cause for the detention.

12. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.