**NETWORK PROJECT et al., Plaintiffs,**

v.

**CORPORATION FOR PUBLIC BROAD-CASTING et al., Defendants.**

Civ. A. No. 1059–73.

United States District Court, District of Columbia.

July 23, 1975.

Melvin L. Wulf, New York City, Oscar G. Chase, Brooklyn, N. Y., Victor S. Friedman, New York City, for plaintiffs.

James L. McHugh, Jr., Washington, D. C., for Corp. for Public Broadcasting.

Harry M. Plotkin, Washington, D. C., for Public Broadcasting Service.

David Epstein, J. Roger Edgar, Department of Justice, Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

CORCORAN, District Judge.

In this action the plaintiffs seek declaratory and injunctive relief and damages for alleged violations of their rights under the Public Broadcasting Act of 1967 (the Act), *as amended*, 47 U.S.C. § 396 *et seq.* (1970), and under the First and Fifth Amendments to the Constitution. For reasons set out below, the Court concludes that the case against the individual defendants is moot; that the plaintiffs have no implied private right of action under the Public Broadcasting Act of 1967; and that the complaint is otherwise jurisdictionally defective.

## I

### The Parties

The plaintiffs are: (1) the Network Project, an unincorporated membership organization whose membership allegedly includes viewers of noncommercial educational television; (2) the American Civil Liberties Union (ACLU), many of whose members are alleged to be regular viewers of noncommercial educational television; (3) 11 individuals who claim to be viewers of noncommercial educational television; and (4) three individuals, *viz.*, Paul Jacobs, Saul Landau and John Kuney, who claim to have written, produced or directed programs for noncommercial educational television.

The defendants are: (1) the Corporation for Public Broadcasting (CPB); (2) the Public Broadcasting Service (PBS); and (3) Clay T. Whitehead and Patrick J. Buchanan (the federal defendants).

CPB is a nonprofit corporation, incorporated under the laws of the District of Columbia and established pursuant to the Act. The CPB was established to facilitate the development of educational broadcasting, to assist in the development of systems of interconnection for the distribution of educational television and radio programs and to engage in those activities in ways that will most effectively assure the maximum freedom of noncommercial educational systems and stations from interference. 47 U.S. C. § 396(g)(1)(A)–(D).

PBS is a nonprofit membership corporation organized under the laws of the District of Columbia. Its membership consists of the licensees of noncommercial educational television stations. The purpose of PBS, according to its Articles of Incorporation, is to arrange for and provide interconnection facilities for the distribution of noncommercial broadcast programs and to generally assist and support noncommercial broadcasting pursuant to the Public Broadcasting

Act.[1] The Act provides that CPB will facilitate the establishment of one or more interconnection systems; it does not however provide specifically for PBS's existence.

Clay T. Whitehead, one of the federal defendants, is the former Director of the Office of Telecommunications Policy (OTP), a part of the Executive Office of the President, established pursuant to the President's Reorganization Plan No. 1 of 1970, 3 C.F.R. 1066 (1966–1970 Comp.). He resigned from his position effective September 15, 1974, after commencement of this action. The responsibilities of the Director of OTP are, (and were) *inter alia,* to serve as the President's principal adviser on telecommunications, assure effective communication of the views of the Executive Branch on telecommunications policy to Congress and to the Federal Communications Commission (FCC), and to coordinate telecommunications activities of the Executive Branch. Executive Order No. 11556, September 4, 1970.

Patrick J. Buchanan, the other federal defendant, is a former Special Consultant to the President. He resigned effective November 15, 1974, after the commencement of this suit. He gave advice and counsel to the President on public broadcasting as part of his duties as Special Consultant.

## II

### *Pleadings*

The plaintiffs complain that the defendants have acted in violation of the Public Broadcasting Act and the First and Fifth Amendments.

They cite defendants Whitehead and Buchanan for allegedly attempting to influence votes by the CPB Board of Directors, to cause the CPB to cease funding controversial public affairs programming, and to have certain educational network broadcasters removed from the air.

The plaintiffs also allege that CPB and PBS acted illegally in that they engaged in the practices of censoring entire programs, or parts thereof, prior to distribution to local stations; prescreening and allowing others to prescreen programs produced for noncommercial educational television prior to distribution; issuing warnings to—"flagging" —local stations of program content considered by them to be controversial; requiring detailed descriptions of program content in applications for funding; and allowing the federal defendants (Whitehead and Buchanan) to affect program content. In addition, plaintiffs charge violations of the Act by CPB in that CPB allegedly participates illegally in programming and operation of a network. Finally, they charge that the CPB Board of Directors is illegally constituted.

CPB and PBS and the federal defendants have each moved to dismiss the action on various grounds. Consideration of the various arguments of the defendants follows.

## III

### *Mootness As To The Federal Defendants*

As noted, the plaintiffs allege illegal activity on the part of the federal defendants Whitehead and Buchanan both as individuals and in their official capacities. On January 16, 1975, the federal defendants filed a supplemental memorandum in support of their motion to dismiss which added the additional ground that since Whitehead and Buchanan no longer occupy official positions with the executive office the claims against them are moot. The Court agrees.

■■■ The federal courts are limited to the resolution of actual cases and controversies by Article III of the Constitution. There must be "concrete legal issues, presented in actual cases, not abstractions." *Golden v. Zwickler,* 394 U.

---

Public Broadcasting Service's Motion to Dismiss, at 7–9 (Sept. 6, 1973).

S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969). If it is determined at any stage of the proceeding that a case was moot when initiated or became moot because of subsequent events, the Court is without jurisdiction because "[m]ootness is a jurisdictional question." *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971). *Accord, People of State of California v. San Pablo & Tulane R. Co.,* 149 U.S. 308, 13 S.Ct. 876, 37 L.Ed. 747 (1893); *State of Alabama ex rel. Baxley v. Woody,* 473 F.2d 10 (5th Cir. 1973).

We look first at the claims asserted against the federal defendants as individuals.

It is clear that the declaratory and injunctive relief sought against these defendants relates to power which they possessed as government officials and that there is no basis now, after their resignations from office, for asserting that these individuals represent a threat to the exercise of illegal direction, supervision or control over CPB or its grantees.

■ The claims against these defendants in their individual capacities are also based upon § 398 of the Act, and the First Amendment. But § 398 is limited in its application to departments, agencies, officers and employees of the United States, and the First Amendment acts only as a restraint upon government action, not that of private persons. *Cf. Public Utilities Commission v. Pollak,* 343 U.S. 451, 461, 72 S.Ct. 813, 96 L.Ed. 1068 (1952). Since Whitehead and Buchanan are no longer in the class of people against whom these provisions operate, the claims against them in their individual capacities are moot. *Cf. DeFunis v. Odegaard,* 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974).

The claims against the federal defendants in their official capacities, however, require further consideration.

Fed.R.Civ.P. 25(d)(1) provides for "automatic substitution":

When a public officer is a party to an action in his official capacity and

during its pendency dies, resigns, or otherwise ceases to hold office, the actions does not abate and his successor is automatically substituted as a party.

■ The Advisory Committee Notes state that "[i]n general [the rule] will apply whenever effective relief would call for corrective behavior by the one then having official status and power, rather than one who has lost that status and power through ceasing to hold office." 3B *J. Moore, Federal Practice* ¶ 25.01(13), at 25–38 (2d ed. 1974). *See also Spomer v. Littleton,* 414 U.S. 514, 521 n. 9, 94 S.Ct. 685, 38 L.Ed.2d 694 (1974); 3B *J. Moore, Federal Practice* ¶ 21.09(1)–(3) (3d ed. 1974). Substitution is appropriate when the original officer is replaced by an acting officer. *City of New York v. Ruckelshaus,* 358 F.Supp. 669 (D.D.C.1973), *aff'd sub nom. Train v. City of New York,* 420 U.S. 35, 95 S.Ct. 839, 43 L.Ed.2d 1 (1975).

The "effective relief" test suggested in the Advisory Committee Notes supports application of Rule 25(d)(1) in this case. The effective relief sought by plaintiffs here, declaratory and injunctive relief regarding past, present and future actions, would have to apply to officials in office. Thus, we must determine whether, in this case, there are appropriate substitute officials within the meaning of the rule.

■ As to Buchanan it is alleged that upon his resignation his "duties" were taken over by Dean Burch, Counsellor to the President, and later distributed among three different presidential advisers. The difficulty in applying Rule 25(d)(1) to this situation is that Buchanan's position as Special Consultant to the President is not designated to have specific duties and functions under any statutes or regulations. In view of the personal nature of that office, so closely associated with the President, this Court finds that there is no adequate basis for the operation of Rule 25(d)(1) as to defendant Buchanan. Since Buchanan no longer occupies his official position and

relief against him as an individual is moot, this Court finds that all claims against defendant Buchanan should be dismissed as moot.

The situation as to Whitehead is different. It is uncontradicted that Whitehead has a successor, John Eger, occupying his position as *Acting* Director. Eger's substitution under Rule 25(d)(1) would accordingly be appropriate.

However, the federal defendants still contend that actions against Eger, Whitehead's successor, would also be moot because the plaintiff's have failed adequately to allege that the successor has continued the allegedly illegal acts of the predecessor. The 1961 amendments to Rule 25(d)(1) removed the requirement that plaintiff must demonstrate the need for continuing the action upon substitution; however, the complaint may be subject to challenge for mootness by the successor. 3B *J. Moore, Federal Practice* ¶ 25.09(3); Advisory Committee Notes of 1961 to Rule 25(d)(1), *id.* ¶ 25.01(13).

In the recent case of *Spomer v. Littleton,* 414 U.S. 514, 94 S.Ct. 685, 38 L.Ed. 2d 694 (1974), the Supreme Court considered the issue of mootness in the context of "automatic substitution" of the defendant's elected successor.[2] The plaintiffs, black citizens, alleging that the local prosecutor and his staff had engaged in specific acts of racial discrimination, sought declaratory and injunctive relief and damages. The Court held that where the complained of illegal actions are personal, no allegations being made that the actions reflect official administration policy, and the plaintiff fails to allege specifically that the successor intends to continue the ac-

tions, the complaint is subject to dismissal as moot. The Court distinguished *Allen v. Regents of the University System of Georgia,* 304 U.S. 439, 444–45, 58 S.Ct. 980, 82 L.Ed. 1448 (1938), where university officials challenged tax collection policies of the Collector of Internal Revenue which reflected interpretations of the Internal Revenue Code. The Court held in *Allen* that the allegations were sufficient to justify substitution and withstand challenge for mootness.

Here the plaintiffs have alleged that defendants Whitehead and Buchanan "and other officers and employees of the United States" influenced and coerced CPB Directors, employees, and grantees, and employees of PBS, with the intent to interfere with and control program content. Although plaintiffs allege specific acts of defendants Whitehead and Buchanan, they have not alleged that those acts reflected a general policy of the Executive Branch which could be assumed to have continued to exist under Whitehead's successor. The general allegations as to other unidentified officers and employees do not cure this defect. Therefore, the Court concludes that the claims for declaratory and injunctive relief against the federal defendant Whitehead and his successor in their official capacities are moot.[3]

## IV

*Implication Of A Private Right Of Action Under The Public Broadcasting Act of 1967*

The plaintiffs allege that the actions of the defendants violate §§ 396 and 398 of the Act and that they have a private right of action to enforce those sections. Although unable to identify an express

---

2. In *Spomer v. Littleton, supra,* there was automatic substitution of a successor under Supreme Court Rule 48(3), which is equivalent to and based upon Fed.R.Civ.P. 25(d) as amended in 1961. 414 U.S. at 521 n. 9, 94 S.Ct. 685.

3. Similarly, plaintiffs' Ninth Claim for Relief, *see* note 5 *infra,* alleging that one member

of the CPB Board of Directors, Irving Kristol, is serving illegally because he has not been confirmed by the Senate, 47 U.S.C. § 396(c)(1), is also moot for the reasons stated above. The Court is reliably informed that Mr. Kristol severed all official connections with CPB on or about December 31, 1973.

provision of such a right, plaintiffs contend that private actions are not precluded by Congress and this particular act necessarily implies a right of action. The Court disagrees.

■ Recent cases indicate that implication of a right of action from a statute requires close examination of the statute and its legislative history—"the inference of such a private cause of action not otherwise authorized by the statute must be consistent with the evident legislative intent and, of course, with the effectuation of the purposes intended to be served by the act." *National Railroad Passenger Corp. v. National Association of Railroad Passengers*, 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974) (*Amtrak*). *See also Cort v. Ash*, —— U.S. ——, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975); *Securities Investor Protection Corp. v. Barbour*, 421 U.S. 412, 95 S.Ct. 1733, 44 L.Ed.2d 263 (1975) (*SIPC*); *Holloway v. Bristol-Meyers Corp.*, 158 U.S.App.D. C. 207, 485 F.2d 986 (1973). In each of these cases, the courts denied a claim to an implied right of action because such action might disrupt the system established by Congress for accomplishing the purposes of the statute, and there was no indication of a legislative intent to permit the action.

■ Those cases, of course, contrast sharply with *J. I. Case v. Borak*, 377 U. S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), which did recognize an implied right of action. There the Court held that the Securities Exchange Act of 1934, clearly a regulatory and remedial statute, created a right of action in favor of stockholders damaged by misrepresentations violative of § 14(a) of the Securities Exchange Act of 1934. The Court concluded that the "broad remedial purposes" of the Act and the necessity for private action to effectuate those purposes supported the implication of such a right. But the Public Broadcast-

ing Act is neither remedial nor regulatory, and in constrast to *Borak* there is no indication that the Congress passed the Act to protect any threatened rights.

The plaintiffs contend, however, that as viewers they fall within a category of persons which Congress sought to benefit and that there will be no assurance that those benefits will be available unless viewers are given a right of action to police the activities of CPB.

It is unquestioned that the Act accords benefits to viewers. That is apparent from § 396(a) which provides in part:

(4) that it furthers the general welfare to encourage noncommercial educational radio and television broadcast programming which will be responsive to the interests of people both in particular localities and throughout the United States, and which will constitute an expression of diversity and excellence;

(5) that it is necessary and appropriate for the Federal Government to complement, assist, and support a national policy that will most effectively make noncommercial educational radio and television service available to all citizens of the United States; . . .. 47 U.S.C. § 396(a).

But although the "intent to benefit" is apparent,[4] the plaintiffs still fail to demonstrate that the right of action is necessary and appropriate within the meaning of *Borak, Cort, Amtrak, SIPC*, and *Holloway, supra*.

In determining whether an alleged implied right of action exists in this case it is important to keep in mind not only what Congress sought to accomplish but the means they provided to accomplish their declared purposes.

The picture which emerges from the statute and its legislative history is that

---

4. The plaintiffs have not specifically argued that the writer, producer, and director plaintiffs were within the group intended to be benefited, and this Court finds no basis for such an assertion.

Congress used every effort and every device available to create an entity which would provide maximum financial and other assistance to the noncommercial educational broadcasting industry with a minimum of federal government involvement. The design is capsulized in the language of § 398 which says in part:

> . . . Nothing contained in this part shall be deemed . . . to authorize any department, agency, officer, or employee of the United States to exercise any direction, supervision, or control over educational television or radio broadcasting, or over the Corporation of any of its grantees or contractors, or over the charter or bylaws of the Corporation . . . . § 398.

By the same token there is no indication whatsoever that Congress intended to provide a private right of action to dissident viewers or other individuals who might be dissatisfied with the operations of CPB.

■■ In the view of the Court, were it to allow suits under the Act by persons who had no more than a viewing interest or who were otherwise merely dissatisfied with the manner in which CPB or its grantees carry out the purposes of the Act, it would seriously impede the attainment of the stated purposes of the Act, and it would inevitably enmesh the courts in supervision of the detailed day-to-day operations of CPB— a result which Congress clearly intended to avoid.[5]

## V

### *Jurisdictional Issues*

We now turn to plaintiffs' claims of jurisdiction based on 28 U.S.C. §§ 1361, 1337 and 1331(a).

■■ 28 U.S.C. § 1361. District courts have original jurisdiction "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." The Court agrees with the defendants that § 1361 is inappropriate in this case because CPB and PBS are not agencies of the United States and the members of the CPB Board of Directors are not officers of the United States. The Act specifically provides that CPB "will not be an agency or establishment of the United States Government." 47 U.S.C. § 396(b).[6]

28 U.S.C. § 1337. District Courts have original jurisdiction "of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies." Plaintiffs assert jurisdiction under this section by virtue of the fact that the Act came into being as an amendment (Title III) to the Communications Act of 1934, which has been held to be an act regulating commerce. *National Broadcasting Co. v. United States,* 319 U.S. 190, 227, 63 S. Ct. 997, 87 L.Ed. 1344 (1934).[7] The defendants counter that the Act, by its terms, was enacted under the "general

---

5. Plaintiffs' Ninth Claim for Relief alleges, *inter alia,* that CPB's Board of Directors is improperly constituted, in violation of the Public Broadcasting Act of 1967 and of the First Amendment. Even if such a claim were judicially cognizable, *see Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); *Keim v. United States,* 177 U.S. 290, 20 S.Ct. 574, 44 L.Ed. 774 (1900), inasmuch as it is embraced within the Public Broadcasting Act of 1967, the claim must fail for the reasons stated above in this Part. Furthermore, bottoming such a claim under the rubric of the First Amendment is

of no avail in these circumstances. *See* Part V *infra. See also* note 3 *supra.*

6. Necessarily, then, plaintiffs' reliance on PBS being an agent of CPB for mandamus purposes must also fail. Moreover, PBS is not mentioned at all in the Act.

7. It does not follow, however, that there is an implied right of action under the Communications Act of 1934. *See, e. g., Smothers v. Columbia Broadcasting System, Inc.,* 351 F.Supp. 622, 624–25 (C.D.Cal.1972), and cases cited therein.

welfare" clause of the Constitution,[8] not the commerce clause, thus making § 1337 inapplicable to this action.

We need not resolve this dispute in view of our holding, *supra*, that there is no implied private right of action under the Public Broadcasting Act, even if the Act is held to be a regulation of commerce.[9]

28 U.S.C. § 1331(a). This is the "federal question" section, under which plaintiff-viewers assert violations of the First and Fifth Amendments. Plaintiff-viewers claim that the defendants have violated their First Amendment rights to uncensored programs, and to information and knowledge through noncommercial educational television.

However, as plaintiffs recognize, § 1331(a) is not available to confer jurisdiction unless the plaintiffs can also meet the $10,000 requirement. But, it is well established, too, that a dismissal of the complaint for failure to meet the $10,000 requirement is inappropriate unless it appears to a legal certainty that the plaintiff could not recover that statutory amount. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938); *Gomez v. Wilson*, 155 U.S.App.D.C. 242, 251, 477 F.2d 411, 420 (1973).

When, as here, the allegation of the jurisdictional amount is controverted, the burden is on the plaintiff to establish that amount. *Gomez v. Wilson, supra. See also Hague v. C.I.O.*, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed.

1423 (1939); *KVOS, Inc. v. Associated Press*, 299 U.S. 269, 57 S.Ct. 197, 81 L. Ed. 183 (1936). Moreover, the fact that the plaintiff alleges the deprivation of some constitutional right, as here, does not translate to mean that the requisite jurisdictional amount need not be satisfied. *Lynch v. Household Finance Corp.*, 405 U.S. 538, 547, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972); *James v. Lusby*, 162 U.S.App.D.C. 352, 499 F.2d 488 (1974); *Gomez v. Wilson, supra.*

Assuming, *arguendo*, that the plaintiff-viewers have properly pleaded a constitutional right to receive uncensored noncommercial educational television programs, the Court concludes that their attempted valuations of that right do not satisfy the statutory standard.[10]

Plaintiffs contend that the $10,000 requirement is met by reason of the following:

(1) First Amendment rights are worth more than $10,000 by definition;

(2) it would cost each plaintiff $10,000 to purchase the unconstitutionally censored programs;

(3) the damages done to noncommercial educational broadcasting has harmed each plaintiff at least $10,000; and

(4) the cost to the defendants in the event of a judgment for the plaintiffs would be in excess of $10,000.

We look at each of these claims.

(1) As to plaintiff-viewers' assertion that First Amendment rights are by def-

---

8. 47 U.S.C. § 396(a)(4) provides:

   The Congress hereby finds and declares that it furthers the *general welfare* to encourage noncommercial educational radio and television broadcast programming which will be responsive to the interests of people both in particular localities and throughout the United States, and which will constitute an expression of diversity and excellence. (Emphasis added.)

9. In that instance, there is no pendent jurisdiction under § 1337. *Post v. Payton*, 323 F.Supp. 799 (E.D.N.Y.1971).

10. Although plaintiffs do not seek to maintain a class action, it is nevertheless clear beyond doubt that each of the plaintiffs must individually have in controversy an amount in excess of $10,000. *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); *Snyder v. Harris*, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969).

   For the purposes of a motion to dismiss, it is clear, of course, that the allegations of plaintiffs' complaint must be taken as true. *Gardner v. Toilet Goods Ass'n*, 387 U.S. 167, 172, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967).

inition worth more than $10,000, it is well established in this Circuit that "any automatic finding of the required amount in controversy just because (constitutional) rights are in issue may be more than § 1331(a) will tolerate." *Gomez v. Wilson, supra,* 155 U.S.App. D.C. at 252 n. 56, 477 F.2d at 421 n. 56. Accordingly, this assertion, without more, must fail.

(2) In measuring the pecuniary value to the claim of the deprivation of their right to receive, plaintiffs attempt to ascribe that valuation in terms of the cost to them in purchasing "lost" programs. This argument, while ingenious,[11] is wide of the mark for two reasons. First, this argument employs a measure of damages not consonant with the asserted loss of a right to receive as set out in their complaint. The claim of the plaintiff-viewers is that they were deprived of the opportunity to experience the ideas and viewpoints contained in certain programs via noncommercial educational television; their complaint does not allege that they were precluded from purchasing such programs. Indeed, plaintiffs' measure of damages in this regard would appear to violate the rules and regulations of the Federal Communications Commission that local licensees must retain the absolute right to edit, select and reject programs. 47 C.F.R. § 73.658(e). *See also National Broadcasting Co. v. United States, su-*

*pra.* More basically, plaintiffs' argument is devoid of any competent proof that the cost of acquiring a certain program allegedly censored by defendants would in fact exceed $10,000. *Cf. James v. Lusby, supra.*

(3) Plaintiffs' contention that they are harmed because the institution of noncommercial educational television broadcasting is damaged by the defendants' assertedly unlawful activities is wholly speculative and without any factual foundation. Indeed, there is a conspicuous lack of any concrete injury susceptible to even a low standard of pecuniary valuation. In resolving complex constitutional claims, the federal judicial process may not operate in an amorphous, undefined atmosphere.[12]

(4) In terms of the judgment which the case would produce with regard to the effect on the defendants' activities, were the plaintiffs successful on the merits, the plaintiffs have failed utterly to specify what costs would conceivably be involved. Furthermore, it would appear, as CPB and PBS contend, that the prayer for relief, if granted in full, would merely require CPB and PBS to allocate funds differently than they do at present, rather than resulting in increased costs to those defendants.

Thus, it is clear that none of the plaintiff-viewers has satisfied the requisite jurisdictional amount, and the complaint must be dismissed as to them.[13]

---

11. "Of course, pleadings must be something more than an ingenious academic exercise in the conceivable." *United States v. SCRAP,* 412 U.S. 669, 688, 93 S.Ct. 2405, 2416, 37 L.Ed.2d 254 (1973).

12. In an analogous context, the Supreme Court has consistently held that generalized grievances common to a class do not ordinarily satisfy jurisdictional prerequisites. *See, e. g., Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974). Similarly, the interests at stake in federal constitutional litigation must generally be those of the plaintiffs at bar, rather than those of third parties. *See, e. g., United States v. Raines,*

362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960) ; *Tileston v. Ullman,* 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943).

13. The claims of non-viewer plaintiffs Jacobs, Kuney and Landau, set out in the Fourth Claim for Relief, are not on any firmer footing. In their affidavits these plaintiffs assert that, as a result of the alleged failure of CPB and PBS to distribute programs they wrote, directed and produced, they have lost their jobs, have been unable to find similar positions in the noncommercial educational television industry, and that their reputations have been injured. They seek damages for the supposed injury to their professional reputations and for the

*Post v. Payton, supra. Cf. Kheel v. Port of New York Authority,* 457 F.2d 46 (2d Cir.), *cert. denied,* 409 U.S. 983, 93 S.Ct. 324, 34 L.Ed.2d 248 (1972).

## VI

In the light of the foregoing, the Court need not reach the remaining First Amendment claims of the plaintiff-viewers, *viz.,* whether CPB and PBS are sufficiently imbued with "state action;"[14] whether these plaintiffs have stated a cause of action of a right to receive under the First Amendment;[15] and whether these plaintiffs have the requisite "standing" to maintain such a cause of action.[16]

Accordingly, it is by the Court this 23rd day of July, 1975,

Ordered, adjudged and decreed that plaintiffs' complaint against the federal defendants Whitehead and Buchanan be, and the same is hereby, dismissed as moot; and it is further

Ordered, adjudged and decreed that plaintiff's Ninth Claim for Relief in the complaint, concerning Irving Kristol, be, and the same is hereby, dismissed as moot; and it is further

Ordered, adjudged and decreed that plaintiffs' complaint alleging a private cause of action for damages and declaratory and injunctive relief under the Public Broadcasting Act of 1967 be, and the same is hereby, dismissed for failure to state a claim upon which relief can be granted; and it is further

Ordered, adjudged and decreed that plaintiffs' complaint alleging jurisdiction under 28 U.S.C. §§ 1337 and 1361 (1970) be, and the same is hereby, dismissed for want of such jurisdiction; and it is further

Ordered, adjudged and decreed that plaintiffs' complaint alleging jurisdiction under 28 U.S.C. § 1331(a) (1970) be, and the same is hereby, dismissed for failure to satisfy the $10,000 jurisdictional amount; and it is further

Ordered, adjudged and decreed that plaintiffs' Fourth Claim for Relief in the complaint be, and the same is hereby, dismissed for failure to state a claim upon which relief can be granted.

---

failure to have their work product distributed over noncommercial educational television.

The damages these plaintiffs seek are not for the injury from CPB's and PBS's denial of their alleged rights to communicate ideas or experiences, but rather are damages emanating from loss of jobs and injuries to reputations. These rights, whatever their scope, and the damages, if any, flowing from their alleged violation, are irrelevant to the matter in controversy. The First and Fifth Amendments and the Public Broadcasting Act of 1967 do not protect either these plaintiffs' right to work in the noncommercial educational television filed or their professional reputations in that field. Therefore, the Fourth Claim for Relief must be dismissed for failure to state a cause of action upon which relief can be granted. Fed. R.Civ.P. 12(b)(6).

14. *See, e. g., Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *Greenya v. George Washington University,* 512 F.2d 556 (D.C.Cir. 1975).

15. *See, e. g., Kleindienst v. Mandel,* 408 U.S. 753, 82 S.Ct. 2576, 33 L.Ed.2d 683 (1972); *Avins v. Rutgers,* 385 F.2d 151 (3d Cir. 1967), *cert. denied,* 390 U.S. 920, 88 S.Ct. 855, 19 L.Ed.2d 982 (1968). *Compare Comment—The Right to Receive and the Commercial Speech Doctrine: New Constitutional Considerations,* 63 Geo.L.J. 775 (1975).

16. *See, e. g., Warth v. Seldin,* —— U.S. ——, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Schlesinger v. Reservists Comm. to Stop the War, supra; United States v. Richardson,* 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974); *S. v. D.,* 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973).