**Willard J. ROSENBORO,
et al., Appellants,**

**v.**

**Dr. Andrew KIM, et al., Appellees.**

**No. 92–7020.**

United States Court of Appeals,
District of Columbia Circuit.

Argued April 14, 1993.

Decided June 4, 1993.

Adgie O'Bryant, Jr. for appellants.

Thomas R. Mooers argued the cause for appellees and was on the brief for appellee Dr. Andrew Kim.

William C.E. Robinson entered an appearance for appellee Melvin Estrin. With him on the brief was Christopher R. Costabile.

Before WALD, BUCKLEY and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

Dorothy and Willard Rosenboro appeal the district court's dismissal of their diversity action against Andrew Kim and Melvin Estrin. The district court dismissed the Rosenboros' suit before trial because it found to a legal certainty that their claims were worth less than $50,000—the statutory threshold for federal diversity jurisdiction. We affirm the district court's ruling as to Dorothy Rosenboro, but reverse as to Willard Rosenboro.

## I. BACKGROUND

### A. Facts

On September 18, 1988, appellants Willard and Dorothy Rosenboro, husband and wife, were in a car accident involving appellee Andrew Kim's son and appellee Melvin Estrin's employee. Soon after the accident, Dorothy Rosenboro was diagnosed with acute cervical and lumbar sprains. Six months later, her physician concluded that her cervical sprain was resolved, but that her lumbar sprain persisted. In August 1989, she told the same doctor that she was doing fine and was discharged from his care. There is no medical evidence suggesting that Dorothy Rosenboro received any permanent injury from the crash; indeed, she has given a sworn statement disavowing any such claim. Her medical care cost $2,130; she did not lose any wages or suffer any property damage from the accident.

Willard Rosenboro was also hurt in the mishap. After the incident, he was treated for assorted traumas, strains, and tendon problems with his back, knees, and shoulders. Several months later, Rosenboro told an orthopedic surgeon, Dr. Frank Watkins, that his knee and shoulder injuries had cleared up, but that he still avoided prolonged bending, stooping, and heavy lifting because of his back problem. Dr. Watkins' examination confirmed the persistence of the back ailment. Specifically, Dr. Watkins' probe revealed that Rosenboro had "tender spinous processes" and "tender paralumbar muscles with tender trigger points," leading Dr. Watkins to conclude that Rosenboro had a "musculoligamentous sprain of [the] lumbosacral spine." Additionally, because of the aforementioned "trigger points in the paralumbar muscles," the doctor found that, under the Manual for Orthopaedic Surgeons in Evaluating Permanent Physical Impairment, Rosenboro had a 10% partial permanent lower back disability. Dr. Watkins nevertheless discharged Rosenboro from active care at that point because Rosenboro had "reached a plateau of maximal medical improvement." According to Rosenboro, the permanent back ailment diagnosed by Dr. Watkins continues to interfere with his work as a "wage leader" at a United States Navy supply depot, a position that requires him to hoist objects weighing between 10 and 700 pounds. Aside from the back problem and the consequent diminution of his lifting capacity, Rosenboro has incurred a variety of concrete expenses due to the collision: $1,828 in lost wages, $807 in car repair bills, and $2,880 in medical bills.

### B. Procedural History

On August 14, 1989, the Rosenboros, District of Columbia residents, filed a diversity suit in district court against Kim, a Virginia resident, and Estrin, a Maryland resident. The Rosenboros' complaint alleged that the

negligence of Estrin[1] and Kim's son caused the September 1988 automobile accident, and that Kim and Estrin were jointly and severally liable for $500,000 in damages. However, when the Rosenboros failed to file an opposition to Kim's Motion to Dismiss for Lack of Subject Matter Jurisdiction, their action was dismissed without prejudice. They then filed a second, nearly identical district court suit on August 6, 1990. This time the complaint specified that each of the Rosenboros sought $280,000 in damages to compensate for lost income, property damage, medical bills, pain and suffering, lost earning capacity, and loss of consortium.

In November 1990, both defendants, alleging that neither plaintiff's claim was worth the $50,000 required for federal diversity jurisdiction under 28 U.S.C. § 1332,[2] filed pretrial motions to dismiss the second suit. The district court, after evaluating the paper record gathered through discovery, agreed with the defendants and dismissed the case with prejudice. In analyzing Dorothy Rosenboro's claim, the court highlighted two factors. First, it noted that there was no finding that she had sustained a permanent injury. Although the court did not explicitly say so, it appeared to find this fact significant because it suggested that Rosenboro had not demonstrated any likelihood of recovering substantial unliquidated damages, i.e., for pain and suffering, at trial. Second, the court stressed that her liquidated damages claim was extremely minimal, consisting of only a couple thousand dollars in medical expenses. Taken together, the two points convinced the court that, under *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938), her suit should be dismissed because there was a "legal certainty" that her entire damages claim was not worth the requisite $50,-000.

Turning to Willard Rosenboro's claim, the court again focused on his relatively modest liquidated damages arising from the accident (about $5,500) as well as evidence suggesting that his unliquidated damage claim was not of any great magnitude. In discussing the latter claim, the court conceded that, in contrast to his wife, Willard Rosenboro had proffered medical evidence of permanent injury. The court concluded, however, that this finding was not "substantiated" by his liquidated medical expenses—only $2,880, the bulk of which went to diagnostic tests. Here, the court apparently reasoned that if Rosenboro had suffered a serious debilitating injury, that would be evidenced by substantial bills for medical care and treatment. In evaluating the potential for unliquidated damages, the court also highlighted the fact that, when asked in deposition about his current physical problems, Rosenboro neglected to mention any back condition at all. The court seemed to infer that this omission, like the insubstantial medical bills, was inconsistent with the presence of a serious long-term condition that might support a substantial unliquidated damages award.

## II. DISCUSSION

### A. *Legal Standard*

█ Over fifty years ago in *St. Paul Mercury*, the Supreme Court announced the standard for deciding whether, in any federal case, the amount in controversy exceeds the jurisdictional threshold:

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that ... the sum claimed by the plaintiff controls if the claim is apparently made in good faith. *It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.* The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the

---

1. The complaint alleged that Estrin himself was operating the vehicle; apparently, it was later determined that Estrin's employee, Landers Simmons, was in fact the driver. *See* Appellants' Brief at 2.

2. Section 1332 provides in pertinent part:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,-000, exclusive of interest and costs, and is between—
   (1) citizens of different States; ....

existence of a valid defense to the claim. But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed.

303 U.S. at 288–89, 58 S.Ct. at 590 (emphasis added; footnotes omitted). In applying the *St. Paul Mercury* test, we have emphasized that, although the party asserting jurisdiction always bears the burden of establishing the amount in controversy once it has been put in question, the Supreme Court's yardstick demands that courts be very confident that a party cannot recover the jurisdictional amount before dismissing the case for want of jurisdiction. *See Martin v. Gibson,* 723 F.2d 989, 991, 993 (D.C.Cir.1983) (per curiam) (characterizing the *St. Paul Mercury* standard as "exacting" and "stringent"); *see also Burns v. Anderson,* 502 F.2d 970, 971 (5th Cir.1974) (describing the *St. Paul Mercury* test as one of "liberality" toward the party asserting jurisdiction); *McDonald v. Patton,* 240 F.2d 424, 426 (4th Cir.1957) (to justify dismissal, "the legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim"). But, while the governing law mandates generosity in evaluating the eligibility of a claim for federal jurisdiction, it also specifies that (with an exception not relevant here) the claims of multiple plaintiffs may not be aggregated for the purpose of meeting the $50,000 threshold for diversity jurisdiction. *See, e.g., Troy Bank v. G.A. Whitehead & Co.,* 222 U.S. 39, 40–41, 32 S.Ct. 9, 9, 56 L.Ed. 81 (1911).

## B. *The Merits*

■ Applying these principles, we conclude that the district court was correct in dismissing Dorothy Rosenboro's claim.[3] Although she did refer to intermittent back problems in her deposition and in her responses to interrogatories, Ms. Rosenboro submitted *no* medical evidence showing that she had a permanent back ailment and at one point expressly *denied* having any permanent injury that prevented her from performing normal physical activities—an admission that her counsel now alleges to have been in error. But even looking at the evidence in the light most favorable to Rosenboro, these inconsistencies in her own accounts of her condition, and, more importantly, the total lack of medical findings showing that she has a continuing or permanent injury convince us to a legal certainty that her claim does not satisfy the amount in controversy requirement.

Estimating the maximum potential value of unliquidated damage claims is an inexact science at best. In past cases, however, we have recognized that longer-lasting and more severe injuries are more likely to give rise to substantial unliquidated damage awards than

3. Recent cases of this court have applied what appears to be a *de novo* standard of review to the district court's application of the legal certainty test, although none mentions that standard of review explicitly. *See Martin v. Gibson,* 723 F.2d 989, 992–93 (D.C.Cir.1983) (per curiam) (reversing district court's dismissal for failure to meet the amount in controversy requirement without noting any deference to the district court's judgment); *Kahal v. J.W. Wilson & Associates, Inc.,* 673 F.2d 547, 549 (D.C.Cir.1982) (per curiam) (holding that the district court was "correct" in finding that amount in controversy requirement was not met); *Love v. Budai,* 665 F.2d 1060, 1063–64 (D.C.Cir.1980) (per curiam) (again reversing the district court without mentioning any deference to the trial court's resolution of the issue). *But cf. Zumerling v. Devine,* 769 F.2d 745, 749 (Fed.Cir.1985) (applying a clearly erroneous standard to trial court's *acceptance* of jurisdiction where amount in controversy had been challenged); *James v. Lusby,* 499 F.2d 488, 492 (D.C.Cir.1974) (per curiam) (applying abuse of discretion standard to review of district court's certification of case to District of Columbia courts where issue underlying the certification decision was whether the federal amount in controversy requirement had been met); *Nelson v. Keefer,* 451 F.2d 289, 297–98 (3d Cir.1971) (stating that, in reviewing a district court's decision on this issue, an appellate court should "give the benefit of every doubt to the judgment of the trial judge," but still make an independent "detailed appraisal of the evidence bearing on damages"). Given the exacting "legal certainty" standard that the district court was obliged to apply here, we would reverse that court's decision as to Willard Rosenboro even under a deferential standard of review; therefore, we leave determination of the proper standard of review for another day.

short-term, minor ailments. Accordingly, in applying the *St. Paul Mercury* test, we have found the presence of medical evidence showing that a plaintiff is suffering from a continuing or permanent physical impairment to be an important indicator that a substantial unliquidated damages award could be legally justified. *Martin v. Gibson* exemplifies this point. There, an automobile accident plaintiff with lost wages and medical expenses of approximately $1,650 sought additional unliquidated damages based on alleged continuing injuries to her back and neck, severe headaches and "functional limitations." *See* 723 F.2d at 990–91. In support of her claim, the *Martin* plaintiff proffered a physician's report showing that over a year after the accident she was still suffering from painful injuries due to the collision. *See id.* at 992. The district court nonetheless found that her claim did not satisfy the then-$10,000 amount in controversy floor and dismissed her case. *See id.* at 991. We reversed, chiefly on the ground that the doctor's report supporting the plaintiff's claim of permanent injury was sufficient to prevent the strict legal certainty standard from being satisfied. *See* 723 F.2d at 992–93; *id.* at 993 n. 5 ("[W]e hold ... that under the specific facts presented on this limited record, *including a colorable claim of permanent injury supported by a physician's report,* the stringent standard of *St. Paul Mercury* has not been met.") (emphasis added); *cf. Burns v. Anderson,* 502 F.2d 970, 972 (5th Cir.1974) (affirming dismissal where there was no evidence showing plaintiff had suffered pain of any great magnitude or lasting duration); *James v. Lusby,* 499 F.2d 488, 493 (D.C.Cir.1974) (per curiam) (affirming district court where plaintiff had no proof supporting claim of physical injuries).

Here, Dorothy Rosenboro has offered no evidence similar to that which we relied on in *Martin.* Moreover, because Congress has raised the amount in controversy requirement five-fold in the intervening years, her burden is even greater than Martin's; Rosenboro must produce evidence supporting a legal uncertainty about whether she could prove nearly $48,000 in unliquidated damages. *Cf. McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936) (once a party's allegations of jurisdictional facts are challenged, it must "support [those allegations] by competent proof"). The evidence before us provides nothing to support such an uncertainty; accordingly, we find that the district court properly dismissed her case for lack of subject matter jurisdiction.

■ Willard Rosenboro's case is different. As in *Martin,* he *has* produced medical evidence substantiating his claim that he has suffered a permanent back impairment as a result of the accident. He has furthermore submitted testimony that his injury causes him pain during the course of his work, and interferes with his ability to perform that work as effectively as he did before the accident. For Rosenboro to reach the jurisdictional threshold, a jury would only have to find that he, a man in his forties, has suffered and will continue to suffer from pain and limitations on his ability to work and engage in other activities that, over the course of his expected life, have a value equal to the jurisdictional amount. While that result is by no means foreordained or perhaps even likely, we do not think it so far-fetched—given the medical report of a permanent injury and the testimony about pain and impediment—that it can be said to a legal certainty that it could not reasonably occur. *Cf. Nelson v. Keefer,* 451 F.2d 289, 297 (3d Cir.1971) (in making an amount in controversy determination, courts must accept plaintiffs' factual allegations in pretrial record as true).

■ The two factors relied on by the district court do not convince us otherwise. The trial court first noted that any claim of a substantial permanent injury was not "substantiated" because Mr. Rosenboro had incurred such minimal medical fees. Implicitly, the court must have reasoned that if Rosenboro's back caused him severe or continuing problems, he would have racked up more substantial bills for treatment. But the record in fact reveals another plausible explanation for Rosenboro's limited medical expenses: in discharging Rosenboro from his care after the accident, Dr. Watkins explicitly noted that Rosenboro had "plateaued" at a point of "maximal medical improvement." In

such a situation, Rosenboro might reasonably decline to run up additional medical expenses in a futile effort to improve what a specialist determined was an intractable condition.

Similarly, we do not find the fact that Rosenboro did not mention his back problem at his deposition fatal to Rosenboro's case. At the deposition, Rosenboro was asked whether he had "any problems with [his] body now." The court reporter transcribed his response as follows: "At different times, when I travel long distance, I have a problem with my knees. Sometimes at night, depending on which way I sleep, I might lay on my right or left shoulder, you know, it aches, but——." We do not know what might have followed the "but"; Rosenboro may have simply trailed off or may have been interrupted by the next question. We decline, however, to place much stock in one possible inconsistency in the record when both the medical reports and the interrogatory responses support Rosenboro's claim of a permanent and painful back injury. While perhaps reasonable for the district judge to weigh the deposition against Rosenboro's cause, we do not find it sufficient to create a legal certainty that the jurisdictional amount would not be reached.[4]

### III. CONCLUSION

We are of course aware that Congress, in amending § 1332 to raise the amount in controversy limit to $50,000, sought to stem the tide of diversity litigation in the federal courts. *See* H.R. REP. No. 889, 100th Cong., 2d Sess. 45 (1988) U.S.Code Cong. & Admin.News pp. 5982, 6005. Nevertheless, federal courts are still obliged (1) to include inherently nebulous unliquidated damage claims in the amount in controversy calculus and (2) to dismiss cases only if it appears to a legal certainty that the amount in controversy barrier cannot be breached. While these obligations certainly do not mean that diversity suits backed only by purely speculative or unsupported allegations of injury cannot be ousted from federal court, *see Martin,* 723 F.2d at 993 n. 5 (bare allegation of such damages as pain and suffering and loss of consortium does not satisfy the jurisdictional amount requirement); *Kahal v. J.W. Wilson & Associates, Inc.,* 673 F.2d 547, 549 (D.C.Cir.1982) (per curiam) ("Liberal pleading rules are not a license for plaintiffs to shoehorn essentially local actions into federal court through extravagant or invalid punitive damage claims."), they do mean that federal courts may not toss out cases like Willard Rosenboro's in which there are tenable claims of potentially debilitating and painful permanent injuries supported by a physician's report. That state of affairs, we emphasize, does not strip a district court of all defenses against an irresponsibly overblown action. A court may, as indeed Congress suggested it should, *see* H.R. REP. No. 889, at 45, use Rule 11 of the Federal Rules of Civil Procedure to sanction attorneys who file complaints whose jurisdictional allegations are markedly deficient insofar as any realistic possibility of recovery of the jurisdictional amount. Appropriate use of that rule could provide a needed disincentive for attorneys to wildly overestimate damage claims in order to obtain diversity jurisdiction.

The district court's judgment dismissing the case for lack of jurisdiction is affirmed as to Dorothy Rosenboro and reversed as to Willard Rosenboro, and the case is remanded for further proceedings on Willard Rosenboro's claims.[5]

*So ordered.*

---

4. Appellee Kim also argues that, in analyzing whether Willard Rosenboro's claims meet the jurisdictional requirement, we should consider the fact that he signed a release of all claims arising from the accident. But the presence of such a release is a defense to liability, and defenses cannot be considered in determining the amount in controversy. *See St. Paul Mercury,* 303 U.S. at 289, 58 S.Ct. at 590.

5. In this court, the Rosenboros assert for the first time that their case should be transferred to the District of Columbia's courts. Since they did not raise this issue in the district court, it has been

waived. In any case, their substantive argument on this point is meritless and does not warrant discussion.