Norma L. ROGERS, Plaintiff,

v.

LOEWS L'ENFANT PLAZA HOTEL, et al., Defendants.

Civ. A. No. 80–1778.

United States District Court, District of Columbia.

Nov. 13, 1981.

## MEMORANDUM OPINION

JOYCE HENS GREEN, District Judge.

Plaintiff, Norma Rogers, alleges in her complaint that while employed by the defendant Loews L'Enfant Plaza Hotel (Hotel) she was subjected to physical and emotional harassment by her superiors. Claiming that defendants' conduct has deprived her of rights guaranteed under the Constitution and federal, local and common law, she seeks monetary, declaratory and injunctive relief. Motions to dismiss are presently before the court. A recitation of the allegations is germane to the rulings on those motions.

In September, 1979, plaintiff was hired by the defendant Hotel as Assistant Manager of the Greenhouse Restaurant. Defendant James Deavers, Manager of that restaurant, was plaintiff's immediate supervisor with whom she was required to work closely in order to assure the smooth operation of the restaurant. Plaintiff alleges that after being employed a few weeks, Deavers began to make sexually oriented advances toward her, verbally and in writing, which extended over a period of two months. The defendant would write her notes and letters, pressing them into her hand when she was busy attending to her duties in the restaurant, or placing them inside menus that plaintiff distributed to patrons of the restaurant, or even slipping them into plaintiff's purse without her knowledge.

Plaintiff further claims that defendant would also telephone her at home or while she was on duty at the restaurant, which conversations included sarcastic, leering comments about her personal and sexual life. Plaintiff was frightened and embarrassed by this defendant's actions and uncertain as to how she could protect herself. She contends that she continually rejected his suggestions and rebuffed his advances by telling defendant that she was not interested in him personally, and that his suggestions and advances were distressful and unwanted.

Thomas A. Mauro, Thomas A. Rothwell, Washington, D. C., for plaintiff.

Salvatore A. Romano, Washington, D. C., for defendants.

During this period, plaintiff received what she considered to be an abusive and violent telephone call from defendant Deavers' wife, who had apparently discovered a letter written by her husband to the plaintiff. Ms. Deavers warned Rogers not to become involved with her husband. Extremely disturbed by this call, plaintiff urged defendant to tell his wife that there was no relationship, other than a working one.

Plaintiff avers that for a short time after the telephone incident between herself and Ms. Deavers, the advances ceased, but soon they resumed again. This time in addition to leaving more notes, Deavers would pull at plaintiff's hair, touch her and try to convince her to spend a night or take a trip with him. The complaint states that he offered her gifts and favors and at times used abusive crude language, stating that he found her attractive and would never leave her alone.

The 'explicit sexual advances ceased at the end of November, but then the employment atmosphere and working conditions at the Greenhouse became difficult and very uncomfortable according to plaintiff. Defendant Deavers would sometimes exclude her from meetings of the Greenhouse staff; he suggested to the staff that plaintiff was unhappy with her job and might not stay; he used abusive language, belittling plaintiff in the presence of the staff; he refused to cooperate with her or share necessary information on occasion. Plaintiff claims he generally made it difficult for her to perform her job.

Plaintiff attempted to arrange a meeting with defendant Randy Gantenbein, the Hotel's Food and Beverage Manager, who had authority to resolve staff problems in the Greenhouse, in order to discuss defendant Deavers' conduct. She asserts Gantenbein avoided her and for three weeks declined to meet her. Near the end of this period, Deavers advised Rogers that defendant Gantenbein intended to discharge both Deavers and Rogers. After pursuing the matter, plaintiff was able to meet with Gantenbein in January, 1980, but only after the Hotel Manager suggested he do so. At that time, plaintiff states she explained the atmosphere and working conditions in the restaurant beginning with defendant Deavers' past sexual advances. Defendant Gantenbein denied he had any intention of discharging plaintiff as Deavers had warned, but acknowledged that he had known, prior to their meeting, about Ms. Deavers' telephone call to plaintiff in mid-October.[1] Gantenbein, according to plaintiff, advised her to be patient and to wait and see if the situation would improve.

Plaintiff's allegations continue that by the end of February, 1980, defendant Deavers notified her that he would do everything in his power to have her fired. Plaintiff contacted her attorney and requested Gantenbein to meet with him, which Gantenbein refused to do. The next day Gantenbein asked plaintiff to take an evening position with the Hotel, noting that it was obvious that things would not work out between plaintiff and defendant Deavers. She refused, again requesting that the Hotel management or its attorney promptly meet with her attorney, but the request was denied.

Plaintiff and her counsel eventually met with Hotel management on March 14, 1980. By a letter dated March 17, attorneys for the Hotel advised plaintiff that they had "admonished and reprimanded" Deavers. Hotel management, however, saw no reason to separate the two employees, and insisted that plaintiff report back to work with defendant Deavers. They advised Rogers that the company would "monitor" the relationship through weekly meetings. Plaintiff rejected this solution.

As an alternative, the Hotel offered to separate the two by transferring plaintiff to a higher paying position as night Room

---

1. Plaintiff alleges that other supervisory personnel at the Hotel also knew of defendant Deavers' conduct toward plaintiff, but had taken no action to prevent it. Plaintiff further argues that defendant Deavers had engaged in sexually harassing conduct in the past with other female employees of the Greenhouse.

Service Manager with the Hotel. Plaintiff rejected this offer also. The Hotel refused to transfer defendant Deavers to a night position. Plaintiff thereafter filed a complaint against defendants with the Equal Employment Opportunity Commission (EEOC) on March 28, 1980.[2]

Essentially then, the complaint before the Court alleges that defendant Deavers with knowledge of defendant Gantenbein and other supervisory employees at the Hotel willfully and with premeditation forced himself on plaintiff and attempted to force her either to submit to his importunings or lose her employment: She asserts that she has been severely damaged both mentally and physically by the conduct described above in violation of rights guaranteed her by 42 U.S.C. §§ 1981 and 1983 and by the District of Columbia Human Rights Act, D.C.Code Ann. § 1–2501 *et seq.* (formerly § 6–2201 *et seq.*). Plaintiff further claims that defendants engaged in tortious conduct, specifically 1) invasion of plaintiff's right to privacy at her home, in her place of employment, and in her personal life; 2) infliction of extreme emotional distress; 3) assault and battery. The corporate defendants, it is charged, failed to exercise proper supervision and control over their employees, thereby causing plaintiff injury and making defendants jointly and severally liable to plaintiff.

Defendants have presented motions to dismiss pursuant to the Federal Rules of Civil Procedure 12(b)(6), 12(b)(1), and for partial summary judgment pursuant to Rule 56, as well as a motion to strike or dismiss. Each motion will be considered separately.

## I

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendants have moved to dismiss on the following grounds: (a) the complaint fails to state a claim upon which relief can be granted under Section 2000e–2(a) of Title 42 of the United States Code and Section 1–2512(1) (formerly § 6–2221(a)(1)) of the District of Columbia Human Rights Act; and (b) the complaint fails to state a claim upon which relief can be granted under District of Columbia common-law principles of tort.

"For the purposes of a motion to dismiss, the material allegations of the complaint are taken as admitted. And, the complaint is to be liberally construed in favor of plaintiff."[3] A complaint "should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim. Mere vagueness or lack of detail is not ground for a motion to dismiss...."[4]

### (a) *The Title VII and D.C. Human Rights Act Claims*

Plaintiff filed a complaint with EEOC in March, 1980. In July, 1980, her charge was dismissed because the Hotel had made a written settlement offer which EEOC concluded afforded full relief for the harm alleged. The Notice of Right to Sue which then issued, however, was withdrawn by EEOC in August, 1980, due to "administrative error." It was not until June, 1981, that a second Notice of Right to Sue was issued. This time plaintiff's charge was dismissed by EEOC on the basis that examination of the evidence indicated that there was no reasonable cause to believe that the sex discrimination allegation was true. However, the plaintiff then received a Notice of Reconsideration in August, 1981, which stated that the Letter of Determination, as well as the Notice of Right to Sue had been revoked and that further review of the charge would follow. The matter appears to be pending still.

Since plaintiff has not received a Notice of Right to Sue from EEOC and chooses not

---

**2.** EEOC has twice issued and twice withdrawn a Notice of Right to Sue. The case is still pending before the EEOC.

**3.** *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404, *reh. denied* 396 U.S. 869, 90 S.Ct. 35, 24 L.Ed.2d 123 (1969).

**4.** 2A J. Moore, Federal Practice ¶ 12.08 (2d ed. 1981).

to bring her Title VII claim at this time,[5] the Court need not dismiss a claim which does not exist. As to her claim under the D.C. Human Rights statute, which is inextricably entwined with her Title VII claim, it shall be dismissed without prejudice.

### (b) Common-law Tort Claims

*Right to Privacy*: "To date the law of privacy comprises four distinct kinds of invasion of four different interests of the plaintiff, which are tied together by the common name, but otherwise have almost nothing in common except that each represents an interference with the right of the plaintiff 'to be let alone.' " [6] The type of invasion of privacy applicable to this case falls within the rubric of intrusion,[7] a tort recognized in the District of Columbia by the United States Court of Appeals in *Pearson v. Dodd*, 410 F.2d 701, 704 (D.C.Cir.), *cert. denied*, 395 U.S. 947, 89 S.Ct. 2021, 23 L.Ed.2d 465 (1969):

> We approve the extension of the tort of invasion of privacy to instances of intrusion, whether by physical trespass or not, into spheres from which an ordinary man in a plaintiff's position could reasonably expect that the particular defendant should be excluded.

■ Plaintiff has alleged in this case that defendant Deavers called her at home, as well as at work when he was off duty, and that he made leering comments about plaintiff's personal and sexual life to her. Complaint ¶¶ 16 & 19. While not alleging that defendant Deavers publicized specific infor-

mation about her, she does contend he used abusive language and belittled her in the presence of staff. *Id.* ¶ 20. However, "[u]nlike other types of invasion of privacy, intrusion does not involve as one of its essential elements the publication of the information obtained," but it does involve the "obtaining of the information by improperly intrusive means." [8]

■ Cases involving persistent and unwanted telephone calls, as alleged here, where invasion of privacy has been found, have generally concerned calls by debt collectors.[9] This situation is analogous, and since tort law exists "to protect citizens from other citizens" where "intrusion is not reasonably expected," [10] it is sufficient for the purposes of this motion to dismiss to find that invasion of plaintiff's privacy as alleged in the pleadings by improperly intrusive telephone calls could be such a violation of her right of privacy, constituting a tort for which she may recover damages to the extent that it can be proved. Although in most circumstances it is obviously not an intrusion to call someone at home, or even at his/her place of business, in this particular situation, with allegations of sexual harassment in personal, as well as professional life, under the standards to be followed in determining whether to dismiss a claim,[11] the pleadings are sufficient to indicate an intrusion into a sphere from which plaintiff Rogers could reasonably expect that defendant Deavers should be excluded. Defendants' motion to dismiss plaintiff's claim of invasion of privacy must, therefore, be denied.

**5.** A party may demand a formal right-to-sue letter from EEOC after 180 days from the date the charge was filed. 42 U.S.C. § 2000e–5(f)(1).

**6.** W. Prosser, The Law of Torts § 117, at 804 (4th ed. 1971).

**7.** Intrusion "must be something in the nature or prying or intrusion ... which would be offensive or objectionable to a reasonable man ... the thing into which there is intrusion or prying must be ... private." W. Prosser, *supra* note 7, § 117, at 808.

**8.** *Pearson v. Dodd*, 410 F.2d at 704. The court in *Pearson v. Dodd* relied upón a New Hampshire case *Hamberger v. Eastman*, 106 N.H.

107, 206 A.2d 239 (1964). In that case, the court quotes Prosser for the proposition that "the tort of intrusion on the plaintiff's solitude or seclusion does not require publicity and communication to third persons although this would affect the amount of damages..." *Id.* at 242.

**9.** *See Housh v. Peth*, 165 Ohio St. 35, 133 N.E.2d 340 (1956); *Carey v. Statewide Finance Co.*, 3 Conn. C.C. 716, 223 A.2d 405 (1966).

**10.** *Pearson v. Dodd*, 410 F.2d at 704.

**11.** *See* discussion in Section I of this opinion.

■ *Assault & Battery* : It is elemental that assault is a tort which protects a plaintiff's "interest in freedom from apprehension of a harmful or offensive contact with the person ..."[12] and battery is the "interest in freedom from intentional and unpermitted contacts with the plaintiff's person ..."[13] One can be subject to liability to another for assault if:

(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and

(b) the other is thereby put in such imminent apprehension.[14]

A defendant can be liable for battery if the requirements of (a) are met and

(b) an offensive contact with the person of the other directly or indirectly results.[15]

■ To constitute the tort of assault, the apprehension must be one which would normally be aroused in the mind of a reasonable person and apparent ability and opportunity to carry out the threat immediately must be present. The mental injury which results could include, for example, fright or humiliation.[16] Here, plaintiff Rogers has asserted that she was frightened and embarrassed by defendant Deavers' actions, complaint ¶ 17, and was put in imminent apprehension of an offensive contact even though, or especially because, they were in a public restaurant, and she was attempting to perform her duties of employment.

■ "To be held liable for assault, the defendant must have intended to interfere with the plaintiff's personal integrity..."[17]

Plaintiff alleges that although she expressed to defendant Deavers that his suggestions and advances were distressful and unwanted, he continued to engage in that conduct. Complaint ¶¶ 17 & 30. In construing plaintiff's pleadings as required in a motion to dismiss, plaintiff has made adequate claims to defeat a motion to dismiss her assault cause of action.

■ To constitute the tort of battery, a defendant can be found liable for any physical contact with the plaintiff which is offensive or insulting, as well as physically harmful. Of primary importance in such a cause of action is the absence of consent to the contact on the part of the plaintiff, rather than the hostile intent of the defendant, although intent is required. The intent, however, is only the intent "to bring about such a contact."[18]

■ Here, clearly, an absence of consent has been asserted, since plaintiff specifically told Deavers that his advances were unwanted. Plaintiff also recites a touching, which included pulling her hair, and that Deavers intended to bring about this conduct. Complaint ¶¶ 17, 19 & 30. These allegations are sufficient to survive the motion to dismiss as to the battery claim.

■ *Infliction of Emotional Distress* : Plaintiff's third and final tort claim, infliction of emotional distress, can result from either intentional or negligent conduct. Negligent infliction of emotional distress, recognized in the District of Columbia,[19] requires a physical injury,[20] whereas inten-

**12.** W. Prosser, *supra* note 7, § 10, at 37.

**13.** *Id.* at 34.

**14.** Restatement of (Second) Torts § 21 (1979). *See also Madden v. D.C. Transit System, Inc.,* D.C.App., 307 A.2d 756 (1973).

**15.** Restatement of Torts (Second) § 18 (1979). *See also Jackson v. District of Columbia,* D.C. App., 412 A.2d 948 (1980).

**16.** W. Prosser, *supra* note 7, § 10, at 38–39.

**17.** *Id.* at 40–41.

**18.** *Id.* at 35–37. *See also Madden v. D.C. Transit System, Inc.,* D.C.App., 307 A.2d 756, 757 (1973).

**19.** *Waldon v. Covington,* D.C.App., 415 A.2d 1070, 1076 (1980), citing *Perry v. Capital Traction Co.,* 59 App.D.C. 42, 32 F.2d 938, *cert. denied,* 280 U.S. 577, 50 S.Ct. 31, 74 L.Ed. 627 (1929).

**20.** *Gilper v. Kiamesha Concord, Inc.,* D.C.App., 302 A.2d 740, 745 (1973).

tional infliction of emotional distress,[21] also recognized in the District of Columbia,[22] allows recovery in the absence of physical impact.[23] Since plaintiff has alleged only intentional tortious acts in her complaint, only intentional infliction of emotional distress will be considered.

*Clark v. Associated Retail Credit Men*, 105 F.2d 62 (D.C.Cir.1939), the "landmark case in this jurisdiction" [24] states that:

> The law does not, and doubtless should not, impose a general duty of care to avoid causing mental distress. *Id.* at 64. [However] one who, without just cause or excuse, and beyond all the bounds of decency, purposely causes a disturbance of another's mental and emotional tranquility of so acute a nature that harmful physical consequences might be not unlikely to result, is subject to liability in damages for such mental and emotional disturbance even though no demonstrable physical consequences actually ensue. *Id.* at 65.

■ For a prima facie case to be made out, the tortfeasor's conduct must be "wanton, outrageous in the extreme, or especially calculated to cause serious mental distress." *Shewmaker v. Minchew*, 504 F.Supp. at 163.

> This liability "clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities;" it is imposed only when the conduct goes "beyond all possible bounds of decency and [is] regarded as atrocious and utterly intolerable in a civilized community." *Waldon v. Covington*, 415 A.2d at 1076.

Severe emotional distress must have occurred and the conduct must have been intentional.

Of course, subjective intent can rarely be proven directly; therefore, the requisite intent must be inferred, either from the very outrageousness of the defendant's acts or, for example, when the circumstances are such that "any reasonable person would have known that [emotional distress and physical harm] would result . . ." *Id.* at 1077.

The court in *Doyle v. Continental Air Lines*, No. 75 C 2407 (N.D.Ill. Oct. 29, 1979), a sexual harassment case brought under Title VII and various common law claims, including infliction of emotional distress, discussed the tort in the context of an advertising campaign the plaintiff airline attendants felt had sexual overtones which encouraged sexual harassment on the job, as well as in their personal lives. Plaintiffs were frequently exposed to comments which, it was asserted, the advertising campaign and slogan, "We move our tail for you" had prompted. Defendants' motion for summary judgment was granted with the holding that the insulting demeaning and harassing remarks provoked by Continental's advertising campaign were insufficient to establish that defendant's conduct was extreme and outrageous. In that case, however, only insulting demeaning and harassing remarks were alleged, whereas in this case, Rogers claims she has been subjected not only to that type of remark, but also to abusive language and physical advances from her direct supervisor which have resulted in harmful emotional, as well as physical, consequences.[25] Additionally, plaintiff alleges essentially that she left her employment as a result of defendant Deavers' conduct.

In a case somewhat similar to the instant one, but not concerning sexual harassment

---

**21.** Intentional infliction of emotional distress is a "comparatively recent development in state law." *Farmer v. United Brotherhood of Carpenters & Joiners*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977).

**22.** *Waldon v. Covington*, 415 A.2d at 1070; *Shewmaker v. Minchew*, 504 F.Supp. 156 (D.D.C.1980); *Clark v. Associated Retail Credit Men*, 105 F.2d 62 (D.C.Cir.1939).

**23.** *Waldon v. Covington*, 415 A.2d at 1076; *Shewmaker v. Minchew*, 504 F.Supp. at 163.

**24.** *Waldon v. Covington*, 415 A.2d at 1077.

**25.** It should also be noted that the Court is considering a motion to dismiss and not a summary judgment motion as in *Doyle v. Continental Air Lines*.

specifically, *Beidler v. W. R. Grace, Inc.*, 461 F.Supp. 1013 (E.D.Pa.1978), *aff'd mem.*, 609 F.2d 500 (3rd Cir. 1979), a male plaintiff failed to state a cause of action for intentional infliction of emotional distress when he alleged harassment by, *inter alia*, exclusion from meetings necessary to the performance of his job, failure to receive communications concerning his work performance, and intimations that his new assistant would replace him. This case is clearly distinguishable because the extreme conduct alleged by Rogers deals not only with interference with her personal as well as professional life, but adds the dimension of sexual harassment.

The plaintiff further states that she suffered infliction of emotional distress as a result of intentional conduct by the defendants. Complaint ¶¶ 41 & 30. Her assertion of fright and embarrassment resulting from defendant Deavers' actions are added to her notification to Deavers that his suggestions and advances were distressful and unwanted; yet, she says he persisted even when it appeared the Hotel management knew of the problem. *Id.* ¶¶ 17, 19, 23 & 24. He excluded her from meetings of the staff, suggested that she was unhappy with her job and might not stay, used abusive language and belittled her in the presence of the staff, and did not share necessary information with her. *Id.* ¶ 20. Further, Deavers advised her he would do everything in his power to have her fired from her position. *Id.* ¶ 25. Alleging not only difficulty in discussing her problems with Hotel management, but also in arranging meetings between the two parties and their attorneys, *Id.* ¶ 32, and in attempting to resolve the problem over a period of months, plaintiff contends that at no time did the employer offer to remove defendant Deavers from his position as manager of the Greenhouse. *Id.* ¶ 35. This conduct, she claims, precipitated the filing of her complaint with EEOC and necessitated her refusal to return to working conditions she found unacceptable at the Greenhouse.

In her complaint, the plaintiff has clearly alleged conditions and circumstances which are beyond mere insults, indignities and petty oppressions and which, if proved, could be construed as outrageous. Emotional distress and physical harm could reasonably result from the conduct of Deavers, as stated, as well as from the conduct of the Hotel management in response to plaintiff's plight. A cause of action for intentional infliction of emotional distress does, therefore, lie.

II

Pursuant to the Fed.R.Civ.P. 12(b)(1), defendants have moved to dismiss on the following grounds: (a) this Court lacks subject-matter jurisdiction since there is no case and controversy in view of the corrective action taken in this matter; and (b) this Court lacks diversity jurisdiction under section 1332(a)(1) since the amount in controversy does not exceed ten thousand dollars.

(a) *Case and Controversy*: Defendants argue that their corrective action in this matter has rendered moot the existence of any case or controversy under Title VII and the D. C. Human Rights Act. There being no Title VII cause of action instituted here and the D. C. Human Rights Act claim to be dismissed without prejudice, the motion to dismiss on this ground will be denied.

(b) *Diversity Jurisdiction*: The defendants do not claim lack of diversity, but rather that the amount in controversy cannot meet the statutory minimum of ten thousand dollars.

The issue of jurisdiction must be carefully scrutinized, even if not raised by defendants.[26] The standard which courts have applied in determining whether the requisite jurisdictional amount exists[27] was clearly stated in *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938):

---

**26.** *James v. Lusby*, 499 F.2d 488, 492 (D.C.Cir. 1974); *Davis v. Licari*, 434 F.Supp. 23, 25 (D.D. C.1977).

**27.** *James v. Lusby*, 499 F.2d at 492; *Davis v. Licari*, 434 F.Supp. at 26.

The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed.

■ On the face of the pleadings it cannot be said with a legal certainty that the plaintiff cannot recover more than ten thousand dollars, if not the $500,000 she demands. Both compensatory and punitive damages are to be considered in determining the amount in controversy for jurisdictional purposes,[28] but must, of course, be legally recoverable, as they are in this case.[29] This jurisdiction recently awarded a sexual harassment victim $52,500 for her claim even though she was unsuccessful on her Title VII assertion.[30]

■ Defendants argue that in another case in this jurisdiction, the Court was unable to find that the plaintiff's claim could support more than the requisite jurisdictional amount and so remanded the case to Superior Court.[31] That case, however, dealt with an altercation between parties concerning plaintiff's smoking in an office building elevator, where the litigant sought damages for only highly intangible emotional injuries. Here, Ms. Rogers has alleged substantial emotional injury and physical injury. The requirements of diversity jurisdiction have, therefore, been satisfied.

### III

Summary judgment, Fed.R.Civ.P. 56, is a device for "promptly disposing of actions in which there is no genuine issue as to any material fact."[32] Pursuant to Rule 56, defendants have moved to dismiss on the following grounds: (a) there is no genuine issue of material fact that the transaction which is the subject of the plaintiff's complaint does not involve any racial discrimination or state action discrimination, which warrants summary judgment dismissing the claims under Sections 1981 and 1983 of Title 42 of the United States Code and the Thirteenth Amendment to the Constitution;

---

**28.** *See* 1 J. Moore, Federal Practice ¶ 0.93[4] (2d ed. 1981); *James v. Lusby*, 499 F.2d at 493.

**29.** *See* Section IV of this opinion.

**30.** *See Clark v. World Airways*, 24 Empl.Prac. Dec. ¶ 31,385, 24 Fair Empl.Prac.Cas. 305 (D.D.C.1980) (defendant made several "off-color" remarks, touched plaintiff in ways she found offensive, and made explicit sexual advances toward her which she rebuffed).

**31.** *Davis v. Licari, supra* note 43.

**32.** 6 J. Moore, Federal Practice ¶ 56.04[1] (2nd ed. 1981). *See also Bloomgarden v. Coyer*, 479 F.2d 201 (D.C.Cir.1973) where the Court stated:

The summary judgment procedure is properly and wholesomely invoked when it eliminates a useless trial but, of course, not when it would cut a litigant off from his right to have a jury resolve a factual issue bearing significantly on the outcome of the litigation. The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue as to any material facts, and even where his opponent comes forth with nothing, summary judgment must be denied if the facts supporting the motion do not establish the non-existence of such an issue. *Id.* at 206–7.

We are mindful on a motion for summary judgment the inferences to be drawn from the factual material before the court must be viewed in the light most favorable to the party opposing the motion. But we also recognize that in order to raise a material issue of fact precluding the grant of a properly supported motion for summary judgment, more is necessary than mere assertions in the pleadings. *Id.* at 208.

and (b) there is no genuine issue of material fact that the corporate defendants, Loews Corporation, Loews Theatres, Inc., Loews Hotels, Inc. and Marcus Loews Booking Agency, do not control the day-to-day operations of Loews Washington Hotel Corporation, including its labor relations.

### (a) Claims under 42 U.S.C. §§ 1981 & 1983 and the Thirteenth Amendment

The plaintiff has stated in her Memorandum in Opposition to Defendants' Motion to Dismiss that she will not pursue her claim under 42 U.S.C. § 1983, agreeing that her rights were not assailed under color of state, local or other law. Memorandum at 8. Summary judgment will, therefore, be granted as to this issue.

As to the claim under 42 U.S.C. § 1981 and its source, the Thirteenth Amendment, plaintiff never asserts that she was discriminated against on the basis of race, but on the basis of sex alone. She argues, however, that 42 U.S.C. § 1981 should apply to sex as well as race. The overwhelming authority is that both 42 U.S.C. § 1981 and the Thirteenth Amendment relate solely to discrimination based on race and color.[33] Since there can be no genuine issue of material fact than that plaintiff's allegations do not relate to race, summary judgment must be granted as to this contention also.

### (b) Corporate Defendants' Claim

Dismissal is required for those defendants, Loews Corporation, Loews Theatres, Inc., Loews Hotel, Inc. and Marcus Loews Booking Agency which, it is claimed, do not have control of the day-to-day operations of Loews Washington Hotel Corporation and its employees. In his affidavit, Harrison Hartman, Jr., the Vice President and Managing Director of Loews Washington Hotel Corporation states:

Loews Washington Hotel Corporation is a corporation organized under the laws of the District of Columbia with its principal place of business located in the District of Columbia. The company trades as Loews L'Enfant Plaza. Loews Washington Hotel Corporation is a wholly-owned subsidiary corporation of Loews Hotels, Inc. The Washington Hotel Corporation is a separate corporation operated as a profit center and the management of its day-to-day operations are not controlled by Loews Hotels, Inc. The Washington Hotel Corporation independently manages and controls the labor relations of the hotel. Affidavit ¶ 2.

Several exhibits are presented in plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss which, she suggests, indicate that there is some control of the day-to-day operations of the hotel by the other corporations. Memorandum at 16. Plaintiff then states, however, that if there is no control over the management of the employees, plaintiff is willing to have those defendants dismissed. *Id.*

From the submissions before the Court, it is evident that Loews Corporation, Loews Theatres, Inc., Loews Hotels, Inc. and Marcus Loews Booking Agency do not control the management of the employees at the hotel in question and, therefore, defendants' motion to dismiss as to those four defendants shall be granted. Loews Washington Hotel Corporation, trading as Loews L'Enfant Plaza, will remain the sole corporate defendant, while Deavers and Gantenbein remain as the individual defendants.

## IV

The defendants have moved to strike or dismiss plaintiff's request for general[34] and punitive damages,[35] as well as

---

**33.** *Runyan v. McCrary*, 427 U.S. 160, 167–8, 96 S.Ct. 2586, 2592–93, 49 L.Ed.2d 415 (1976); *Lamont v. Forman Bros., Inc.*, 410 F.Supp. 912, 918 (D.D.C.1976); *National Ass'n of Gov't. Employees v. Rumsfeld*, 413 F.Supp. 1224, 1228 (D.D.C.1976), aff'd mem., *National Gov't. Employees v. Brown*, 556 F.2d 76 (1977); *Saad v. Burns International Security Services, Inc.*, 456 F.Supp. 33, 37 (D.D.C.1978).

**34.** General damages are compensatory damages for a harm so frequently resulting from the tort that is the basis of the action that the existence of the damages is normally to be anticipated and hence need not be alleged in order to be proved. Restatement (Second) of Torts § 904(1) (1979).

**35.** See note 35 on p. 534.

the request for a jury trial. Defendants' argument, however, is based solely on restrictions for a Title VII action. Defendants have not claimed, nor can they claim, that plaintiff is not entitled to a jury trial and damages under her common-law tort claims. Plaintiff's Seventh Amendment right to a jury trial is undisputed.[36] Should plaintiff prove her allegations, her right to damages, including punitive damages, from all defendants will exist.[37]

In the District of Columbia, punitive damages, which are awarded to punish and deter outrageous conduct,[38] can be recovered for willful tort actions which are founded on the defendant's "outrageous conduct such as maliciousness, wantonness, gross fraud, recklessness and willful disregard of another's rights." [39] As to an employer, "although most jurisdictions hold to the contrary, in the District of Columbia plaintiff is entitled to punitive damages only if he is able to show that the corporation, through its officers and directors, either participated in the wrongful act or ratified the conduct." [40] Plaintiff has alleged reckless, willful and malicious disregard of her rights by all defendants. She has further alleged that the Hotel management knew of Deavers' conduct and harassment of other women and that by its lack

of action, in essence, silent acquiescence, condoned the behavior. Such allegations, if proven by plaintiff, could entitle her to punitive damages. Of course, here as in all other such cases, whether plaintiff receives punitive damages would be determined solely by the jury,[41] which may decide to reject such award. Defendants' motion to dismiss will be denied.

V

Defendants have submitted a Supplemental Statement consisting of a Notice of Right to Sue which was issued to Norma Rogers by the Equal Employment Opportunity Commission on June 24, 1981. Plaintiff has moved to strike this Supplemental Statement and in support thereof has submitted a copy of a Notice of Reconsideration issued by the Equal Employment Opportunity Commission on August 25, 1981. This Notice indicates that the Commission has reconsidered its June 24, 1981, Letter of Determination terminating plaintiff's charge, as well as the Notice of Right to Sue, and has revoked both of them. Since the Court has before it the Notice of Reconsideration in addition to the withdrawn Notice of Right to Sue, there is no need to strike the Defendant's Supplemental Statement. Both documents are now part of the

---

**35.** (1) Punitive damages are damages, other than compensatory or minimal damages, awarded against a person to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future. (2) Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. In assessing punitive damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause and the wealth of the defendant. . Restatement (Second) of Torts § 908 (1979).

**36.** *See, e. g., Carithers v. District of Columbia,* D.C.App., 326 A.2d 798 (1974); *Parks v. Ratcliff,* D.C.App., 240 A.2d 659 (1968).

**37.** "It has been said that punitive damages are not favored, but the rule is well-established in this jurisdiction that a jury may assess punitive

damages in the proper case." *Wanis v. Zwennes,* D.C.App., 364 A.2d 1193, 1195 (1976).

**38.** *Knippen v. Ford Motor Company,* 546 F.2d 993, 1002 (D.C.Cir.1976).

**39.** *Bay General Industries, Inc. v. Johnson,* D.C. App., 418 A.2d 1050, 1058 (1980), quoting *Riggs National Bank v. Price,* D.C.App., 359 A.2d 25, 28 (1976). *See generally* W. Prosser, *supra* note 7, at 9–10; *Knippen v. Ford Motor Company,* 546 F.2d at 1002–03; *Wager v. Pro,* 603 F.2d 1005, 1011 (D.C.Cir.1979).

**40.** *Clark v. World Airways, Inc.,* 24 Empl.Prac. Dec. ¶ 31,385, 24 Fair Empl.Prac.Cas. 305 (D.D. C.1980) (further discussion of employer's liability with extensive cites to District of Columbia cases).

**41.** *Franklin Investment Co. v. Homburg,* D.C. App., 252 A.2d 95, 98 (1969); *Price v. Griffin,* D.C.App., 359 A.2d 582, 589 (1976).

record. Plaintiff's motion to strike will be denied.

It is, therefore, by the Court, this 13th day of November, 1981,

ORDERED that defendants' motion to dismiss is granted as to the claim under the District of Columbia Human Rights Act, and that claim is dismissed without prejudice, and it is

FURTHER ORDERED, that defendants' motion to dismiss is denied as to all tort claims, and it is

FURTHER ORDERED, that defendants' motions to dismiss are denied as to the claims of lack of a case or controversy and lack of diversity jurisdiction, and it is

FURTHER ORDERED, that defendants' motion for partial summary judgment is granted as to the claims under 42 U.S.C. §§ 1981 and 1983 and the Thirteenth Amendment, and it is

FURTHER ORDERED, that defendants' motion for partial summary judgment is granted as to the dismissal of Loews Corporation, Loews Theatres, Inc., Loews Hotels, Inc. and Marcus Loews Booking Agency as corporate defendants, and it is

FURTHER ORDERED, that defendants' motion to dismiss is denied as to the requests for general and punitive damages, as well as the request for a jury trial, and it is

FURTHER ORDERED, that plaintiff's motion to strike Defendants' Supplemental Statement is denied, and it is

FURTHER ORDERED, that defendants' answer to plaintiff's complaint be filed within twenty days of this order; a status conference is scheduled for December 8, 1981 at 9:45 a. m.

An appropriate Judgment accompanies this Memorandum Opinion.