Nancy C. **SHAFFER**

v.

NATIONAL CAN CORPORATION.

Civ. A. No. 82–5202.

United States District Court,
E.D. Pennsylvania.

June 14, 1983.

Michael L. Banks and Francis M. Milone, Morgan, Lewis & Bockius, Philadelphia, Pa., for National Can.

Alan M. Lerner, Cohen, Shapiro, Polisher, Shiekman & Cohen, Philadelphia, Pa., for Nancy Shaffer.

## MEMORANDUM

GILES, District Judge.

Nancy Shaffer ("Shaffer") charges her former employer, National Can Corporation ("National"), with employment discrimina-

tion in the form of sexual harassment. National moves to dismiss the Title VII claim, contending that the complaint was not filed timely before the Equal Employment Opportunity Commission ("EEOC"). National also alleges that the pendent state causes of action for wrongful discharge and intentional infliction of emotional distress have been supplanted by the remedies provided in the Pennsylvania Human Relations Act ("PHRA"). Finally, National argues that the complaint fails to state a claim for intentional infliction of emotional distress. For the reasons outlined below, National's motion will be granted in part and denied in part.

## I. FACTS

Taking as true all of plaintiff's well-plead allegations, as I must on a motion to dismiss,[1] the salient facts follow. Shaffer was employed at National's Morrisville plant from March 13, 1975 until March 27, 1981, first as a secretary-receptionist and then as a billing clerk. In June of 1977, Pat Dettorre ("Dettorre") was hired as the plant manager of the Morrisville facility. From that point until Shaffer left National's employ, Dettorre allegedly engaged in a continuing course of sexual harassment. Dettorre, who was married, attempted to induce plaintiff to go out with him socially and was very insistent despite her refusals. After plaintiff did not accept his publicly made invitation to the company Christmas celebration, Dettorre told her that "if she did not change her tune he would turn the conversation around and it would not be to her benefit." (Complaint at ¶ 15). He then loudly asked her where she lived and what time he should pick her up, refusing to take "no" for an answer. He made subtle threats, alluding to his power at the plant by calling himself the "king-pin" and noting that "things could get better or worse, depending on whether she decided to 'play ball' with him." (Complaint at ¶ 16). Dettorre made verbal sexual advances, discussed the relative sizes of female employ-

ees' chests, suggested she would be better attired in skirts with slits and generally endeavored to engage her in sexually related conversation. (Complaint at ¶ 17). When Shaffer repeatedly refused to succumb to his dubious charm, Dettorre began to retaliate by alternately mistreating and ignoring her. For example, it is claimed that he excluded her from certain luncheons and ignored her, at the same time being overly friendly towards other female employees. His conduct allegedly made it impossible for Shaffer to carry out her responsibilities, caused her severe mental anguish and ultimately lead to her resignation on March 27, 1981. Plaintiff characterizes this resignation as a constructive discharge.

Although the time frame is greatly disputed, Shaffer sent complaints to both the EEOC and the PHRC. On May 13, 1982, the PHRC dismissed her complaint for failure to file within the ninety day statute of limitations. *See* 16 Pa.Code § 42.11(a). On August 27, 1982, the EEOC made its determination, issuing Shaffer notice of her right to sue. The complaint was filed in this court on November 23, 1982, alleging a violation of Title VII, as well as state claims for wrongful discharge and intentional infliction of emotional distress.

## II. DISCUSSION

### A. *Title VII Claim*

Section 706(e) of Title VII, 42 U.S.C. § 2000e–5(e) (1976), requires the filing of administrative complaints within 180 days of the alleged unlawful employment practice. However, if the discrimination occurs in a "deferral state," the time period is extended. A "deferral state" is one which has its own agency with the power to adjudicate claims of employment discrimination and grant remedies. If the charging party has "initially instituted proceedings" before a state agency, then the EEOC charge must be filed within 300, rather than 180 days. 42 U.S.C. § 2000e–5(e). Pennsylvania is a

1. *See, e.g., Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492, n. 2, 53 L.Ed.2d 557 (1977); *Rogin v. Bensalem Township,* 616

F.2d 680, 685 (3d Cir.1980); *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 444 (3d Cir.1977).

deferral state, with the Pennsylvania Human Relations Commission serving as the state equivalent of the EEOC.[2]

It is undisputed that plaintiff failed to file her complaint with the EEOC within 180 days from her termination date. However, it is agreed that the charge was filed within 300 days. The issue then is whether Shaffer was entitled to invoke the 300 day exception. National claims that Shaffer's charge was not "initially" filed with the PHRC, thus depriving her of the longer time period. Shaffer contends that complaints were sent to the EEOC and the PHRC simultaneously and proffers return receipts to show that the complaint actually arrived at the PHRC first. Resort to extrinsic evidence will not be necessary.[3] A literal reading of the statute makes it clear that in this case where the complaint was first filed has no effect.

Section 706(c), 42 U.S.C. § 2000e–5(c) provides that in a deferral state, an EEOC charge may not be filed "before the expiration of sixty days after proceedings have been commenced under state or local law . . .," or before termination of the state proceedings, whichever is earlier. This language has been interpreted literally to preclude the official filing of a charge with the EEOC before the expiration of the 60 day period, even where the complaint might have technically arrived at the EEOC first. *See Mohasco Corp. v. Silver,* 447 U.S. 807, 816–17, 100 S.Ct. 2486, 2492–93, 65 L.Ed.2d 532 (1980). *See also Citicorp Person-to-Person Financial Corp. v. Brazell,* 658 F.2d 232, 234 (4th Cir.1981); *Wiltshire v. Standard Oil Co. of Cal.,* 652 F.2d 837, 840 (9th Cir. 1981), *cert. denied,* 455 U.S. 1034, 102 S.Ct. 1737, 72 L.Ed.2d 153 (1982); *Wajda v. Penn Mutual Life Insurance Co.,* 528 F.Supp. 548, 563 (E.D.Pa.1981). If the EEOC is not able to file a complaint formally before the run-

ning of the 60 day period then, by necessity, a proceeding before the state agency will be commenced prior to the proceeding before the EEOC. Thus, the interplay between these two statutory sections dictates that where a charge is sent to a state agency it will always be "initially" filed, rendering the 300 day period applicable.

In *Mohasco,* a letter was sent to the EEOC 291 days after the alleged unlawful termination. The EEOC referred the charge directly to the New York State Division of Human Rights. 447 U.S. at 810, 100 S.Ct. at 2489. The Court recognized the very argument National advocates—since plaintiff had not filed with the state agency *first,* he could not claim the 300 day period. To this the Court replied; "[s]ince the EEOC could not proceed until either state proceedings had ended or 60 days had passed, the proceedings were 'initially instituted with a State . . . agency' prior to their official institution with the EEOC." *Id.* at 816–17, 100 S.Ct. at 2492–93. However, in *Mohasco,* the complaint was filed on day 291. Therefore, the addition of the 60 day period brought the elapsed time well over 300 days. Consequently, the Court held that the claim was time barred. *Id.* at 817, 100 S.Ct. at 2493.

The practical effect of *Mohasco* is the "240 day rule." Generally, the charge must be filed with the state agency by day 240, so that the addition of the statutory 60 days will not bring the total over the 300 day mark. A charge filed after 240 days but before the running of 300 days will be timely if the state proceedings terminate before 300 days have elapsed. *See Mohasco,* 447 U.S. at 814–815 and n. 16, 100 S.Ct. at 2491–2492 and n. 16. Thus, *Mohasco* laid to rest more restrictive readings of the statute.[4]

---

**2.** The PHRC is established in the Pennsylvania Human Relations Act ("PHRA"), Pa.Stat.Ann. tit. 43 §§ 951–962.2 (Purdon's 1981 Supp.). The PHRA prohibits employment discrimination on the basis of race, color, religion, ancestry, age, sex, national origin and non-job related handicap or disability. Pa.Stat.Ann. tit. 43 § 955(a).

**3.** Therefore, the motion to dismiss will not be transformed into a motion for summary judgment. *See* Rule 12(b) of the Federal Rules of Civil Procedure.

**4.** In a footnote, the Court essentially overruled *Olson v. Rembrandt Printing Co.,* 511 F.2d 1228 (8th Cir.1975) and progeny. *Olson* held that in order to be timely, a charge must be filed with

Shaffer contends that her charge was received by the PHRC on October 27, 1981,[5] 214 days after her termination. National claims that the filing date was November 5, 1981, 223 days after termination. Assuming arguendo that November 5, 1981 is the appropriate date, the charge would still be timely. Adding 60 days[6] to 223 brings the total elapsed time to 283 days, well within the 300 day statutory period. Therefore, National's Motion to Dismiss Shaffer's complaint as time barred is denied.

**B.** *The Pennsylvania Human Relations Act's Effect on the State Law Claims*

■ National contends that Shaffer's common law claims for wrongful discharge and intentional infliction of emotional distress have been supplanted by the remedies provided under the Pennsylvania Human Relations Act. Only with respect to the contention as to wrongful discharge,[7] do I agree.

The PHRA establishes the exclusivity of its remedies. Section 962(b) provides in part:

[A]s to acts declared unlawful by section five of this act the procedure herein provided shall, *when invoked, be exclusive and the final determination therein shall exclude any other action,* civil or criminal, based on the same grievance of the complainant concerned. If such complainant institutes any action based on such griev-

ance without resorting to the procedure provided in this act, *he may not subsequently resort to the procedure herein.*

Pa.Stat.Ann. tit. 43 § 962(b) (Purdons 1982 Supp.) (emphasis added). An exception to this rule of exclusivity is contained in section 962(c):

If within one (1) year after the filing of a complaint with the Commission, the Commission dismisses the complaint or has not entered into a conciliation agreement to which the complainant is a party, the Commission must so notify the complainant. On receipt of such a notice the complainant shall be able to bring an action in the courts of common pleas of the Commonwealth based on the right to freedom from discrimination *granted by this act.*

Pa.Stat.Ann. tit. 43 § 962(c) (Purdons 1982 Supp.) (emphasis added). The Pennsylvania Supreme Court has interpreted section 962(b) literally noting that the "PHRA provides that when the statutory procedure is invoked, it is exclusive." *Fye v. Central Transp. Inc.,* 487 Pa. 137, 141, 409 A.2d 2, 4 (1979). *See also Comm. Penna. Human Relations Comm'n v. Feeser,* 469 Pa. 173, 178, 364 A.2d 1324, 1326 (1976); *Daly v. Darby Township School District,* 434 Pa. 286, 289–90, 252 A.2d 638, 640 (1969). However, plaintiffs have the option to not invoke the act and instead pursue other remedies. *See Fye,* 484 Pa. at 140–41, 409 A.2d at 4; *Daly,*

---

either the state agency or the EEOC within 180 days. *Olson,* 511 F.2d at 1233. *See Mohasco,* 447 U.S. at 814–16, nn. 16 and 19, 100 S.Ct. at 2491–92, nn. 16 and 19.

**5.** Under Pennsylvania law, the complaint is deemed filed when received by the PHRC. *See* 16 Pa.Code § 42.11(c).

**6.** The PHRC did not formally dismiss the charge as untimely until May 13, 1982. Thus, the 60 day period is applicable because that is earlier than the termination of state proceedings. *See* 42 U.S.C. § 2000e–5(c) (1976).

**7.** Shaffer's wrongful discharge claim is based upon the theory that an action will lie for breach of an at-will employment relationship where the termination violates a clear public policy. *See, e.g., Geary v. United States Steel Corp.,* 456 Pa. 171, 184–85, 319 A.2d 174, 180 (1974); *Yaindl v. Ingersoll Rand Co.,* 281 Pa. Super. 560, 571, 422 A.2d 611, 616–17 (1980).

*See also, Bruffett v. Warner Communications, Inc.,* 692 F.2d 910, 917–20 (3d Cir.1982); *Bonham v. Dresser Industries, Inc.,* 569 F.2d 187, 195 (3d Cir.1977), *cert. denied,* 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978); *Wehr v. Burroughs Corp.,* 438 F.Supp. 1052, 1054–56 (E.D. Pa.1977), *aff'd, with modification, on other grounds,* 619 F.2d 276 (3d Cir.1980). However, this "public policy exception" is very narrow, *see Geary,* 456 Pa. at 181, 184–85, 319 A.2d at 179–80; *Bruffett,* 692 F.2d at 918–19, and generally has been utilized only where, no other remedy exists. *See, Bruffett,* 692 F.2d at 919; *Wehr,* 438 F.Supp. at 1055–56. Given the existence of the PHRA, it is not clear whether such an action would be recognized in this case. However, in light of my resolution of the exclusivity of remedies issue under the PHRA, I do not decide the applicability of the public policy exception.

434 Pa. at 289–90, 252 A.2d at 640. Once the PHRA is "invoked," plaintiff is bound by and limited to its remedies.

By sending a complaint to the PHRC, Shaffer clearly "invoked" [8] the Act's procedures, and thus is limited to its remedies. *See Bonham v. Dresser Industries, Inc.,* 569 F.2d 187, 195 (3d Cir.1977), *cert. denied,* 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978). The exception carved out by section 962(c) does not aid her. This section allows resort to the courts of common pleas based upon the "right[s] . . . granted by this Act." Pa. Stat.Ann. tit. 43 § 962(c). If the PHRC dismisses a complaint within one year, the charging party may resort to the court of common pleas and sue under the Act. In the first instance, Shaffer is in the wrong forum but, more importantly, the exception does not alter the fact that plaintiff is limited to the rights and remedies provided in the PHRA. Thus, the exception contained in section 962(c) is more akin to an exemption from procedural, rather than substantive, exclusivity.

Section 962(b) clearly supplants the plaintiff's claim based on the wrongful discharge-public policy exception. The interests sought to be vindicated by this cause of action are identical to those protected by the PHRA. In *Bonham,* the Third Circuit

held that the PHRA bars a claim for wrongful discharge where plaintiff was allegedly the victim of age discrimination. 569 F.2d at 195. The plaintiff in *Bonham* made the same argument Shaffer proffers here. Specifically, since the Act's prohibition of age discrimination expresses a clear public policy, termination in violation of that policy amounts to wrongful discharge.[9] Predicting the Pennsylvania Supreme Court's resolution of the issue, the Third Circuit stated:

> [W]e believe that the courts of Pennsylvania, if directly confronted with the issue, would hold that the Pennsylvania Human Relations Act and the procedures established therein provide the exclusive state remedy for vindication of the right to be free from discrimination based on age.

*Bonham,* 569 F.2d at 195. This principle was reaffirmed in *Bruffett,* [10] where the court embarked upon an analysis of a claim under the wrongful discharge-public policy exception only because the plaintiff had failed to invoke the PHRA. *Bruffett,* 692 F.2d at 915–16. Since Shaffer has invoked the provisions of the PHRA, her claim for wrongful discharge must be dismissed.

---

**8.** *Lukus v. Westinghouse Elec. Corp.,* 276 Pa. Super. 232, 419 A.2d 431 (1980) indicates that filing a complaint is sufficient, even if it is dismissed as untimely. In *Lukus,* the complaint was sent to the EEOC who forwarded it to the PHRC. Plaintiff immediately wrote to the PHRC, requesting that they terminate proceedings, as she preferred the EEOC to handle the matter. The PHRC terminated their procedure almost before it had begun. The court held that plaintiff has " 'invoked the procedures set forth in [the PHRA]' . . . so as to make those procedures here [the] exclusive state remedy for Westinghouses' alleged discrimination." 276 Pa.Super. at 272, 419 A.2d at 452.

**9.** Plaintiff endeavors to distinguish *Bonham* and *Bruffett* from her case, on the basis of the source of the public policies at issue in each. *Bonham* involved age discrimination and *Bruffett* involved discrimination on the basis of handicap. Pennsylvania's public policy condemning these forms of discrimination is found only in the PHRA. Thus, argues plaintiff, it makes sense that victims of such discrimination should be limited to the remedies provided by that statute. In contrast, the public policy

disapproving discrimination based upon sex is housed in Pennsylvania's Equal Rights Amendment, Pa.Const. Art. I § 28, as well as in the PHRA. In addition, Dettorre's behavior allegedly violates the policies undergirding the statutory prohibitions against adultery and solicitation. Thus, plaintiff argues, the right to be free from sexual harassment and remedies for violations of that right exist independent of the Act. This argument is not persuasive. The exclusivity language of section 962 is unambiguous and does not distinguish between the various forms of discrimination. Moreover, decisions of the Pennsylvania Supreme Court indicate that any such distinction is unwarranted. *See, e.g., Fye,* 487 Pa. at 140–42, 409 A.2d at 3–5. (PHRA, where invoked, is exclusive remedy in sex discrimination case.)

**10.** *Bruffett* modified *Bonham* only to the extent that *Fye* indicated that a plaintiff who did not invoke the PHRA would not be held bound to the exclusivity provision. *Bruffett,* 692 F.2d at 916.

Shaffer's claim for intentional infliction of emotional distress presents a different situation. Unlike the claim for wrongful discharge, the interests sought to be protected by the PHRA and this tort are fundamentally different. The PHRA effectuates the state's interests in eradicating targeted forms of discrimination. Remedies thereunder are tailored to further this interest and include injunctions, reinstatement and awards of back pay. See Pa.Stat. Ann. tit. 43 § 962(c) (Purdon's 1982–1983 Supp.). The tort of intentional infliction of emotional distress vindicates the personal interest of freedom from intentionally imposed mental anguish. Damages, both compensatory and punitive, provide the remedy for this wrong. To the extent that the interests protected and remedies afforded differ, the PHRA could not have been intended and should not be held to supplant a cause of action for intentional infliction of emotional distress.

## C. *Intentional Infliction of Emotional Distress*

■ Finally, defendant challenges Shaffer's claim of intentional infliction of emotional distress, alleging that she has failed to state a cause of action. According to National, the behavior at issue does not rise to the level of "extreme and outrageous." Taking as true all of plaintiff's well-plead allegations, I conclude that her claim for emotional distress is sufficient to survive a motion to dismiss.

Intentional infliction of emotional distress has been defined as follows:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

Restatement (Second) of Torts § 46(1) (1965). Although Pennsylvania has apparently adopted the Restatement formulation *sub silentio, see D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.,* 494 Pa. 501, 511 n. 8, 431 A.2d 966,

971–72 n. 8 (1981); *Papieves v. Lawrence,* 437 Pa. 373, 379, 263 A.2d 118, 121 (1970); *Jones v. Nissenbaum, Rudolph & Seidner,* 244 Pa.Super. 377, 382, 368 A.2d 770, 772 (1976), there is a paucity of caselaw on this topic. Generally, Pennsylvania has accorded this tort a narrow scope, finding a cause of action in only very egregious cases. *See, e.g., Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265, 1274 (3d Cir.1979) (team physician tells sports writer that famous football player suffering from fatal disease, knowing it is not true); *Papieves v. Lawrence,* 437 Pa. 373, 375, 263 A.2d 118, 121 (1970) (concealing child's death and withholding body from parents). *See also, Hume v. Bayer,* 178 N.J.Super. 310, 428 A.2d 966, 970–71 (1981) (intentionally telling parents that child's medical condition much worse than it was). *But cf.: D'Ambrosio,* 494 Pa. at 511 n. 8, 431 A.2d at 971–72 n. 8 (insurance company's alleged "bad faith" failure to honor a claim does not rise to level of extreme or outrageous conduct); *Forster v. Manchester,* 410 Pa. 192, 199–200, 189 A.2d 147, 151–52 (not outrageous to follow an accident victim, conducting surveillance to determine the extent of the injury); *Mullen v. Suchko,* 279 Pa.Super. 499, 505, 421 A.2d 310, 313 (1980) (broken promise of financial support from lover not extreme and outrageous); *Jones v. Nissenbaum, Rudolph & Seidner,* 244 Pa.Super. 377, 383–85, 368 A.2d 770, 774 (1976) (threatening and insulting debt collection not actionable). *See also Cautilli v. GAF Corp.,* 531 F.Supp. 71, 74–75 (E.D.Pa.1982) (employer's plans to sell business after attempting to induce plaintiff to commit to long term employment not extreme and outrageous); *Mazzula v. Monarch Life Insurance Co.,* 487 F.Supp. 1299, 1302 (E.D.Pa. 1980) (not outrageous to refuse to continue to pay disability insurance).

The above cited cases appear to fall into categories at each extreme. The behavior involved was either intensely egregious, as in *Papieves,* or mildly disturbing or annoying, as in *D'Ambrosio,*[11] Since the factual

---

11. *Fair v. Negley,* 257 Pa.Super. 50, 390 A.2d 240 (1978) and *Beasley v. Freedman,* 256 Pa.

Super. 208, 389 A.2d 1087 (1978) arguably reflect exceptions to this conclusion. In both

situation here does not fall neatly into either category, the cases decided in Pennsylvania lend little guidance. However, a recent case in this district, predicting how the courts of Pennsylvania would resolve the issue, held that a complaint similar to Shaffer's stated a cause of action for intentional infliction of emotional distress. *See Vegh v. General Electric Co., et al.,* No. 83–744 slip op. at 3 (E.D.Pa. May 18, 1983). In *Vegh,* plaintiff's supervisor subjected her to sexual advances, harassment and unequal treatment. *Vegh,* slip op. at 2. Sexual harassment cases decided in other jurisdictions also shed some light on this issue.

In *Rogers v. Loews L'Enfant Plaza Hotel,* 526 F.Supp. 523 (D.D.C.1981), plaintiff's immediate supervisor made sexual advances toward her, verbally and in writing, telephoned her and used crude and abusive language. He tried to convince her to date him, despite the fact that he was married, and upon occasion pulled at her hair and touched her. Rogers repeatedly refused his advances. As here, the supervisor in *Rogers* reacted to the plaintiff's refusals by making working conditions intolerable. 526 F.Supp. at 525–26. The court noted that "plaintiff has clearly alleged conditions and circumstances which are beyond mere insults, indignities and petty oppressions and which, if proved, could be construed as outrageous." *Id.* at 531. Similarly, in *Stewart v. Thomas,* 538 F.Supp. 891 (D.D.C.1982) an employee was subjected to sexual advances, verbal pressure, abuse and touching from her employer. Again refusal lead to retaliation. Citing *Rogers,* the court held the complaint to have stated a claim for intentional infliction of emotional distress. *Id.* at 894.

*Rogers* and *Stewart* are almost factually identical to Shaffer's plight. The only major distinction between them lies in Shaffer's failure to claim that Dettorre attempted any physical contact. However, all three cases contain a common thread—a continued course of sexual advances, followed by refusals and ultimately, retaliation. All three plaintiffs alleged that the work place atmosphere became oppressive, causing severe emotional distress.[12] I agree with the analyses in *Rogers* and *Stewart* and hold Shaffer's complaint sufficient to state a cause of action for intentional infliction of emotional distress.

National relies on *Doyle v. Continental Airlines, Inc.,* No. 75–C2407 (N.D.Ill. Oct. 29, 1979) in support of its motion. Continental launched an advertising campaign using the slogan "we really move our tails for you." Plaintiffs, six female flight attendants purporting to represent a class, alleged that the slogan subjected them to harassment and ridicule. For example, passengers would request flight attendants to "move their tails" and other variations on that theme. The court granted Continental's motion for summary judgment,[13] holding these demeaning remarks insufficient for a claim of emotional distress. *Doyle* is instructive to the extent that it points up that "liability 'clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Stewart,* 538 F.Supp. at 894 (citing Restatement (Second) of Torts § 46 Comment d). However, *Doyle* is clearly distinguishable from *Rogers, Stewart* and the instant case. Sexual advances were not focused at any one plaintiff in *Doyle* and the future suc-

cases, breach of the implied warranty of habitability and "slumlordism" were held to state a cause of action for intentional infliction. *See Fair,* 257 Pa. at 60–61, 390 A.2d at 246; *Beasley,* 256 Pa.Super. at 212, 389 A.2d at 1088–89. However, *Fair* and *Beasley* may well be limited to the landlord-tenant genre. *Accord, Cautilli,* 531 F.Supp. at 75. Alternatively, the conditions in the living quarters involved might have been "outrageous."

**12.** Complaint at ¶¶ 20–22, 29, 30. In *Rogers,* plaintiff went and spoke to hotel management

and the hotel attempted to resolve the problem, albeit by means unsatisfactory to Ms. Rogers. 526 F.Supp. at 526–27. Shaffer brought the problem to the plant controller and Personnel Manager, both of whom told her to "roll with it," advising her that "there was nothing she could do." Complaint at ¶ 19.

**13.** As the *Rogers* court noted in distinguishing *Doyle,* there is a different standard involved in a motion for summary judgment and a motion to dismiss. 526 F.Supp. at 530 n. 25.

cess of plaintiff's employment did not hinge upon their performance of sexual favors. Perhaps the point was made best by the court in *Seritis v. Lane,* 30 FEP 423 (Cal. Super.1980). In *Seritis,* a local union official premised job opportunities on sexual favors. With respect to emotional distress the court candidly observed:

> verbal "propositioning" does not create such a tort [intentional infliction of emotional distress] and though deplored by those who would prefer return to the more discreet courtship of the past, open and direct solicitation of sexual intimacy is, like unchecked inflation, a sign of our times. Even solicitation for prostitution, though a crime, has not been held to be civilly actionable wrong. However, where, as here, a *person in a position to grant or withhold employment opportunities uses that authority to attempt to induce workers and job seekers to submit to sexual advances, prostitution and pornographic entertainment, and boasts of an ability to intimidate those who displease him, the tort of willful infliction of emotional distress is committed if harm shown.*

30 FEP at 425. (emphasis added). Dettorre allegedly endeavored to use his authority to gain Shaffer's sexual favors and employed subtle threats, boasting of his power at the plant. Further, retaliatory behavior takes this case far beyond the ambit of insults or demeaning jingles. Therefore, I conclude that Shaffer has stated a cause of action for intentional infliction of emotional distress and National's motion shall be denied.